No. 24-3202

In the United States Court of Appeals for the Third Circuit

**BCR CARPENTRY LLC, KIMBERLY ENRIGHT,
WILLIAM DEMOLA, MICHAEL BENT, and AMY ARROYO,
on behalf of themselves and all others similarly situated,**

*Plaintiffs-Appellants,*

v.

**FCA US, LLC,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of New Jersey
Case No. 21-cv-19364-GC (Hon. Georgette Castner)

**APPELLANTS' OPENING BRIEF**

David Stein
Spencer S. Hughes
Sara Delaney Brooks
**Gibbs Law Group LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.: (510) 350-9700

Samantha Braver
**Handley Farah & Anderson PLLC**
33 Irving Place
New York, NY 10003
Tel.: (202) 559-2433

Joseph J. DePalma
**Lite DePalma Greenberg &
Afanador, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000

*Counsel for Appellants*

## Corporate Disclosure Statement

Plaintiff-Appellant BCR Carpentry LLC is a New Jersey company with a principal place of business in Aberdeen Township, New Jersey. BCR Carpentry has no parent corporation, no publicly held corporation owns more than 10% of its stock, and no publicly held company has a 10% or greater ownership interest in BCR Carpentry.

Dated: January 27, 2025                  */s/ Spencer Hughes*

# Table of Contents

**Page**

TABLE OF AUTHORITIES...................................................................iii

INTRODUCTION ..............................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF RELATED CASES ....................................................3

STATEMENT OF ISSUES ...................................................................4

STATEMENT OF THE CASE ..............................................................4

    I.    Factual Background ........................................................4

    II.    Procedural History ......................................................15

SUMMARY OF ARGUMENT ............................................................17

    I.    The complaint plausibly establishes that FCA's practice misleads consumers and therefore violates the NJCFA .............17

    II.    The complaint also alleges two viable common-law claims..................................................................................19

    III.    Non-precedential decisions from other courts do not support dismissing the complaint here........................................19

STANDARD OF REVIEW .................................................................20

ARGUMENT....................................................................................21

    I.    The complaint plausibly alleges that FCA's practice—labeling its delivery surcharge a "destination charge," despite marking it up to generate hidden profit—could mislead reasonable consumers and thus violates the NJCFA ........................................................................21

        A.    The complaint plausibly establishes a deceptive practice since FCA's conduct has the capacity to mislead reasonable consumers ...........................22

        B.    FCA's practice also qualifies as unconscionable ..............30

C.    FCA omitted a material fact about its destination charge .................................................................38

II.    The complaint states viable common-law claims........................41

III.    Non-binding decisions from other courts do not override the well-pled facts alleged or the expansive nature of the NJCFA ........................................................43

CONCLUSION .....................................................................46

# Table of Authorities

**Page(s)**

**Cases:**

*Alpizar-Fallas v. Favero,*
908 F.3d 910 (3d Cir. 2018) ................................................................ 21, 22

*Assocs. Home Equity Servs., Inc. v. Troup,*
778 A.2d 529 (N.J. Super. Ct. App. Div. 2001) ................................ 31, 33

*Barry v. Arrow Pontiac, Inc.,*
494 A.2d 804 (N.J. 1985) ..................................................................... *passim*

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................21

*Bell v. Publix Super Markets, Inc.,*
982 F.3d 468 (7th Cir. 2020)....................................................................28

*Belmont Condo. Ass'n, Inc. v. Geibel,*
74 A.3d 10 (N.J. Super. Ct. App. Div. 2013) ..................................... 23, 29

*Bruni v. City of Pittsburgh,*
824 F.3d 353 (3d Cir. 2016)........................................................... 20, 25, 29

*Chattin v. Cape May Greene, Inc.,*
524 A.2d 841 (N.J. Super. Ct. App. Div. 1987) ......................................23

*Ciser v. Nestle Waters North America Inc.,*
596 F. App'x 157 (3d Cir. 2015) ...............................................................37

*Cox v. Sears Roebuck & Co.,*
647 A.2d 454 (N.J. 1994) ......................................................... 21, 22, 31, 33

*D'Agostino v. Maldonado,*
78 A.3d 527 (N.J. 2013) ............................................................................31

*Doe v. Princeton Univ.,*
30 F.4th 335 (3d Cir. 2022)...................................................... 20, 21, 28, 29

*Doe v. Univ. of Scis.,*
961 F.3d 203 (3d Cir. 2020) .....................................................................29

*Dougherty v. Drew Univ.*,
545 F. Supp. 3d 363 (D.N.J. 2021) .............................................................42

*Dzielak v. Whirlpool Corp.*,
26 F. Supp. 3d 304 (D.N.J. 2014) ...............................................................42

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ........................................................................20

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC*,
945 F. Supp. 2d 543 (D.N.J. 2013) .............................................................38

*Gennari v. Weichart Co. Realtors*,
691 A.2d 350 (N.J. 1997) ............................................................................22

*Grimm v. City of Portland*,
971 F.3d 1060 (9th Cir. 2020) .....................................................................45

*Harnish v. Widener Univ. Sch. of L.*,
931 F. Supp. 2d 641 (D.N.J. 2013) ................................................ 22, 30-31

*Hawkins v. Globe Life Ins. Co.*,
105 F. Supp. 3d 430 (D.N.J. 2015) ...................................................... 23, 29

*In re Nat'l Credit Mgmt. Grp., LLC*,
21 F. Supp. 2d 424 (D.N.J. 1998) ........................................................ 32, 35

*James v. Glob. Tel\*Link Corp.*,
No. 13-cv-4989, 2018 WL 3736478 (D.N.J. Aug. 6, 2018) ................ 32, 36

*Jefferson Loan Co., Inc. v. Livesay*,
419 A.2d 1164 (N.J. Dist. Ct. 1980) ...........................................................33

*Katz v. Live Nation, Inc.*,
No. 09-cv-3740, 2010 WL 2539686 (D.N.J. June 17, 2010) ............... 32, 33

*Kugler v. Romain*,
279 A.2d 640 (N.J. 1971) ..................................................................... *passim*

*Lemelledo v. Beneficial Mgmt. Corp.*,
696 A.2d 546 (N.J. 1997) ............................................................................21

*Leon v. Rite Aid Corp.*,
774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) ........................................23

*Meshinsky v. Nichols Yacht Sales, Inc.*,
  541 A.2d 1063 (N.J. 1988) ............................................................31

*Miller v. Am. Fam. Publishers*,
  663 A.2d 643 (N.J. Super. Ct. 1995).............................................23

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
  567 F. Supp. 2d 729 (D.N.J. 2008)................................................42

*N.J. Citizen Action v. Schering-Plough Corp.*,
  842 A.2d 174 (N.J. Super. Ct. App. Div. 2003) ................................. 22, 31

*Nafar v. Hollywood Tanning Sys., Inc.*,
  No. 06-cv-3826, 2007 WL 1101440 (D.N.J. Apr. 10, 2007)......... 23, 24, 39

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
  967 F.3d 218 (3d Cir. 2020)..........................................................42

*Ponzio v. Mercedes-Benz USA, LLC*,
  447 F. Supp. 3d 194 (D.N.J. 2020)........................................ 38, 40

*Romoff v. Gen. Motors LLC*,
  574 F. Supp. 3d 782 (S.D. Cal. 2021) ...........................................44

*Romoff v. Gen. Motors LLC*,
  No. 22-55170, 2023 WL 1097258 (9th Cir. Jan. 30, 2023) .......................45

*Schwartz v. Avis Rent A Car Sys.*,
  No. 11-cv-4052, 2012 WL 12909908 (D.N.J. Sept. 18, 2012) ..................39

*Suarez v. E. Int'l Coll.*,
  50 A.3d 75 (N.J. 2012) ................................................................38

*Szczubelek v. Cendant Mortg. Corp.*,
  215 F.R.D. 107 (D.N.J. 2003)............................................... 23, 31

*USPS v. Allied Treatment, Inc.*,
  730 F. Supp. 738 (N.D. Tex. 1990) ...............................................23

*Zauderer v. Off. of Disciplinary Counsel of Sup. Ct.*,
  471 U.S. 626 (1985) ....................................................................26

**Statutes & Other Authorities:**

28 U.S.C. § 1291...........................................................................................3

28 U.S.C. § 1332(d)(2)...............................................................................3

Fed. R. Civ. P. 12(b)(6) .................................................................. *passim*

N.J. Stat. Ann. § 56:8-2..........................................................................22

Restatement (Second) of Torts § 538(2) (Am. Law. Inst. 1977).......................38

## Introduction

Like most automobile manufacturers, Defendant-Appellee FCA pays freight companies to deliver its vehicles to dealerships. And like most manufacturers, FCA recoups its delivery cost by imposing a surcharge on consumers.

But FCA deviates in what it includes within that delivery surcharge, which it labels a "destination charge." In the automotive industry, the term destination charge conveys that the automaker is merely recouping its delivery costs—and nothing more. Despite using that label, FCA departs from the industry norm and marks up its delivery charge to include substantial profit. This hidden markup allows FCA to extract hundreds of extra dollars from consumers on each vehicle sale and lease, without providing them any additional value in return.

Plaintiffs allege that FCA's practice violates the New Jersey Consumer Fraud Act (NJCFA). By using the label "destination charge," yet marking up that charge to include hidden profit, FCA misleads consumers about what is included in the mandatory charge they pay.

The district court correctly recognized that Plaintiffs' NJCFA claims hinge on whether FCA's destination-charge markup had the capacity to mislead reasonable consumers. But it nevertheless dismissed the complaint under Rule 12(b)(6). In doing so, the court misapplied the Rule 12 standard.

Specifically, the district court repeatedly failed to treat well-pled factual allegations as true. The complaint contains ample detail about what consumers know and understand about destination charges. The pleading cites numerous trusted sources to support those consumer-expectation allegations, from *Consumer Reports* to *J.D. Power*, *Kelley Blue Book*, and beyond. These sources all tell consumers that a "destination charge" does *not* contain profit.

These facts plausibly establish that reasonable consumers would not expect FCA's charge to contain profit, and thus that they could be misled by FCA's use of the term "destination charge." Yet the district court brushed aside these allegations, holding that the sources failed to "definitively" establish that consumers expect destination charges to be free of profit.

This analysis misapplied the Rule 12 standard. Plaintiffs need only establish their claims "plausibly"—not "definitively." Because the

2

complaint contains well-pled facts showing that FCA's business practice runs afoul of consumers' reasonable expectations, Plaintiffs pled viable claims. This Court should reverse the dismissal of Plaintiffs' complaint.

## Jurisdictional Statement

This Court has jurisdiction to review the district court's decision under 28 U.S.C. §§ 1291 and 1332(d)(2).

## Statement of Related Cases

Two other pending cases similarly challenge FCA's destination charge practice. *See Beeney v. FCA US, LLC*, No. 22-cv-518 (D. Del.), No. 24-2519 (3d Cir.); *Gunn v. FCA US, LLC*, No. 22-cv-2229 (N.D. Cal.). The plaintiffs and proposed classes in *Beeney* and *Gunn* do not overlap with Plaintiffs-Appellants or the proposed class here, and the state laws at issue are different in each case.

*Beeney* is likewise on appeal before this Court, after the United States District Court for the District of Delaware dismissed the complaint and denied leave to amend. There, the appellants and appellee have each filed a brief, and the appellants' reply brief is due on January 31, 2025. In *Gunn*, FCA's motion to dismiss the operative complaint is pending before the district court as of January 27, 2025.

3

## Statement of Issues

1.      Do the complaint's detailed factual allegations plausibly allege that a reasonable consumer expects a "destination charge" to merely recoup an automaker's delivery costs and not include profit?

2.      Did the district court err by disregarding well-pled facts and by drawing factual inferences in FCA's favor, rather than in Plaintiffs' favor, when granting FCA's Rule 12(b)(6) motion?

3.      Does the complaint state viable claims under the NJCFA and New Jersey common law that survive a motion to dismiss?

## Statement of the Case

### I.      Factual Background[1]

FCA manufactures automobiles. It markets its vehicles under brand names like Fiat, Chrysler, Jeep, Dodge, and Ram. Appx121 ¶ 46. Dealers around the country sell and lease new FCA vehicles to consumers. *Id.*

For FCA, the automobile market has grown painfully competitive. Appx122–23 ¶¶ 49–50. Japanese, Korean, and European firms are carving

---

[1] The facts in this section come from the Second Amended Class Action Complaint, Appx103, to which Plaintiffs refer throughout this brief as "the complaint."

out increasingly large market shares. At the same time, domestic competitors and upstarts like Tesla grow their own customer bases. *Id.*

*Vehicle manufacturers compete intensely over the manufacturer's suggested retail price (MSRP).* FCA understands that its competitiveness depends on vehicle pricing. Appx124 ¶ 52. Its parent company has acknowledged that "intense" competition in the new vehicle market creates a "challenging pricing environment" for FCA. Appx125 ¶ 55. And FCA knows it must be "aggressive" with pricing to compensate for its perceived lower quality compared to its competitors. Appx124 ¶ 53.

When automakers compete on price, they do so through the vehicles' MSRP. Appx126–32 ¶¶ 58–64. The MSRP is the price universally advertised on television, radio, and online. *See, e.g.*, Appx127–29 ¶¶ 59–61. Because the MSRP is the whole ballgame for price shopping, even small changes in the MSRP swing consumer demand. Appx131–32 ¶ 64.

When consumers compare prices across different makes and models, they tend to look at the MSRP alone—*not* ancillary add-on fees. Appx130–32 ¶¶ 62–64. FCA well understands this consumer behavior, which marketing experts have studied and written about for years. Appx136–49 ¶¶ 72–91.

5

***Automakers charge nonnegotiable delivery surcharges.*** After new vehicles are assembled (or arrive from overseas at U.S. ports), automakers pay freight companies to ship them to dealerships across the country. Appx157 ¶ 105. Before selling the vehicles, many automakers add a surcharge—on top of the MSRP—to recoup these delivery costs from consumers. Appx132 ¶ 65. Automakers most commonly label the surcharge as a "destination charge," although manufacturers are not required to add any delivery surcharge to what consumers pay and no specific nomenclature is required to be used to label such a charge. *See* Appx133–35 ¶ 67.

Manufacturers generally set a single destination-charge amount for any given model. Appx160 ¶ 112. That amount represents the average shipping costs for that model from across the country—similar to how postage stamps are priced. *Id.* In this way, consumers in New Jersey pay the same destination charge as those in Florida or Michigan. *See id.*

FCA lists the destination charge on the window stickers it attaches to all new vehicles.[2] Appx132–33 ¶ 66. The window stickers generally list

_____

[2] These stickers are required by federal law. *See* Appx165–66 ¶ 122, Appx176 ¶ 142; *see also infra* at p. 14.

three price components: the MSRP (called the "Base Price"), optional equipment add-ons, and the destination charge. *See, e.g.*, Appx110–11 ¶ 12. The "Total Price" on the sticker is the sum total of these three components.

An example of the relevant part of an FCA window sticker appears below, with added emphasis on the "destination charge" line item:



*Id.* (Plaintiff BCR Carpentry LLC's window sticker).

7

As seen in the image, FCA imposes the destination charge as a surcharge, increasing the "Total Price" for the consumer. Behind the scenes, FCA additionally imposes a charge of the same amount on its dealers. Appx132–33 ¶ 66 & n.25. That way, once a consumer has paid the destination charge at a dealership, the dealer must remit the full amount the consumer paid to FCA. *Id.*

FCA's charge to the dealer is not at issue in this case. *Id.* Plaintiffs challenge the legality of FCA's surcharge on consumers only. *Id.*; *see also* Appx107 ¶ 3, Appx132–33 ¶ 66.

Consumers are powerless to negotiate down FCA's destination charge. Appx133–35 ¶ 67. *Kelley Blue Book*, a prominent automotive-industry guide, explains that "[d]estination fees are not negotiable. No amount of bargaining makes them go away." *Id.* & Appx133 at n.26. Auto Approve, a vehicle-financing company, tells consumers that destination charges are "meant to cover the shipping and handling of your car, and the cost is *always* passed on to the buyer." *Id.* & Appx135 at n.32 (emphasis added). And as the chief analyst for *Cars.com* once succinctly put it, "there's no point wasting time trying to negotiate [the destination charge]. Even if

8

you don't like it, you have to let it go. It's like death and taxes." Appx135 ¶ 68.

***Despite using the label "destination charge," FCA marks up its charge and does not disclose that markup to consumers.*** Facing vicious competition and consumers who are hypersensitive to MSRP changes, FCA developed a ploy to generate more money from its new vehicles. Appx135–36 ¶ 70. FCA realized it could boost revenue and suffer no competitive consequences by including profit within the unscrutinized destination charge. Appx135–36 ¶¶ 70–71.

So FCA began inflating the destination charge well above the freight costs that it actually incurred. Appx135–36 ¶ 70. In 2021, industry watchdog *Consumer Reports* revealed that FCA had bloated its destination charge by "an average of 90 percent on Chrysler, Dodge and Jeep vehicles; 74% on Ram trucks since 2011; and 114% on Fiats since 2012." Appx153 ¶ 98. Despite nearly doubling its surcharge, though, FCA continued to use the industry term of art "destination charge" to describe it—even though much of the surcharge had nothing to do with vehicle delivery, and everything to do with quietly extracting extra profit.

FCA's destination charge had not always been this way. It was once the lowest of any automaker. But over the course of a decade, FCA's charge ballooned far beyond other automakers' charges, as the chart below shows (identifying FCA by the name of its parent company, Stellantis):



Appx153 ¶ 98.

The gulf between FCA and its peers cannot be explained by rising freight costs. Appx154–57 ¶¶ 100; 103–05. Rather, it represents FCA's strategy of extracting profit from the destination charge.

By covertly marking up the destination charge—rather than raising MSRPs—FCA manages to increase revenues without suppressing consumer demand. Appx135–36 ¶¶ 70–71.

In other words, FCA found a way to raise prices without losing any business. FCA takes advantage of a well-known marketing practice called "partition pricing." Appx136–37 ¶¶ 72–73. Partition pricing involves dividing the total price into a base price and a separate surcharge. *Id.* ¶ 73. Marketing studies have shown that this thwarts comparison shopping, since consumers rarely factor surcharges into their buying decisions. Appx136–49 ¶¶ 72–91. For example, consumers will choose a product advertised with a base price of $500 and a mandatory $100 delivery fee over the exact same product advertised with a $600 base price and no delivery fee. Appx139–42 ¶¶ 79–81.

By adding profit into the destination charge, FCA extracts hundreds of extra dollars from each vehicle sale and lease. Appx107–08 ¶ 4. And it does so without offering any additional value in exchange. *Id.*

FCA has never publicly disclosed its markup. The 2021 *Consumer Reports* exposé was the only public report revealing FCA's practice. *See* Appx153 ¶ 98.

But FCA has made at least one public statement about the destination charge. A spokesperson for Chrysler, an FCA brand, told *Cars.com* in 2013 that its destination charge was "based on our costs to deliver a new vehicle" to a dealership. Appx160–61 ¶ 113. Neither there nor anywhere else has FCA disclosed that the charge is not truly "based on [FCA's] costs," but is instead marked up substantially to generate profit. Appx163 ¶ 116.

***Destination charges typically have not included profit.*** FCA's markup runs contrary to industry norms. As the chart above reflects, unlike FCA, other automakers continue to impose much lower destination charges. *See supra* at p. 10. And those automakers typically have not included any profit at all within their destination charges. *See, e.g.,* Appx160 ¶ 112 (Ford and Nissan); Appx161–62 ¶ 114 (Honda).

Consumer-facing publications all report the same message about destination charges: the charges exist only to pass through automakers' vehicle-delivery costs and do not include profit. Appx159–64 ¶¶ 111–18.

Trusted industry sources like *TrueCar* and *J.D. Power* inform consumers that destination charges "aren't a money-making line item." Appx162–63 ¶ 115 & n.91. These and other articles call destination charges "a straight pass-along cost," Appx162–63 ¶ 115 & n.94, and report that the charges are "intentionally a profit neutral activity," Appx160 ¶ 112.

The articles tell consumers explicitly that automakers like FCA "aren't supposed to hide profit in the field." *Id.* Instead, the articles tell consumers that each automaker "attempts to set a [destination charge] rate that is the average across its portfolio to ship vehicles to all parts of the country." *Id.* As one article assured prospective car buyers, the charge "isn't a way for manufacturers to try and pad their prices upwards." Appx160–61 ¶ 113 & n.90.

***FCA's markup also runs counter to federal policy.*** Congress and the FTC recognize that automakers' destination charges are fertile ground for consumer confusion, so surcharges purporting to cover vehicle-delivery costs should *only* recoup those costs—not produce profit. In the 1950s, so-called "phantom freight" ran unchecked, with automakers charging far more for delivery than they paid. Appx166–67 ¶ 125. Members of Congress condemned the practice and called the inflated charges "spurious."

Appx170–71 ¶ 132. Congress pressured the automakers, succeeding in getting them to stop inflating their charges. Appx170–71 ¶¶ 132–33.

In 1958, Congress required manufacturers to affix a window label (now known as a "Monroney sticker") on every vehicle to disclose pricing information, including "the amount charged, if any, to [the] dealer for transportation of [the] automobile." Appx176 ¶ 142. Senator Monroney, the sticker's namesake, explained the vehicle stickers helped to ensure "the abandonment of the old phantom freight" practices. Appx186 ¶ 160. In other words, the automakers were affixing window stickers that posted the true "delivered price with accessories in a plain honest-to-goodness figure." Appx179–80 ¶ 150 & n.118.

More recently, the FTC has similarly recognized the deceptive nature of marked-up charges. It published a notice of rulemaking in November 2023, proposing to ban businesses from "misrepresent[ing] the nature and purpose of any amount a consumer may pay." "Appx150 ¶ 93. Citing research on how partition pricing hurts consumers, the FTC explained that excessive surcharges can "harm competition by directing consumers away from businesses with the best price." *Id.* ¶ 95.

14

## II.     Procedural History

Plaintiffs bought and leased new FCA vehicles at New Jersey dealerships and paid FCA's marked-up destination charge. Appx110–21 ¶¶ 10–44.

When Plaintiffs later learned that FCA had marked up the charge, they filed two lawsuits against FCA, which the district court consolidated. *See* Appx29 at Dist. Ct. Dkt. 25. Plaintiffs alleged three violations of the NJCFA: a deceptive practice, an unconscionable practice, and an unlawful omission. Plaintiffs also brought New Jersey common-law claims for money had and received and unjust enrichment.

FCA moved to dismiss under Rule 12(b)(6). Appx32–33 at Dist. Ct. Dkt. 50. The district court granted the motion and dismissed that complaint without prejudice. Appx78–102. It concluded that average consumers would "typically not be surprised" by a destination charge including profit. Appx95.

Because the district court ordered dismissal without prejudice, Plaintiffs prepared a robust amended pleading to address the court's concerns. Appx103–208 (the Second Amended Class Action Complaint).

The expanded pleading includes hundreds of additional allegations, including citations to consumer-facing publications authored by auto-industry insiders. As discussed, these sources confirm that destination charges are widely understood to solely recoup automakers' delivery costs and not to generate any profit. Appx159–64 ¶¶ 110–18. The complaint also adds additional sources which confirm that destination charges are nonnegotiable. Appx133–35 ¶¶ 67–68.

FCA again moved to dismiss under Rule 12(b)(6). Appx35 at Dist. Ct. Dkt. 69. The district court granted FCA's motion and dismissed the complaint with prejudice. Appx5–24. It concluded, contrary to the above factual allegations, that "the term 'charge' did not imply an absence of profit." Appx14–15. The court disregarded many of Plaintiffs' allegations about the industry consensus regarding the term "destination charge," and held that Plaintiffs did not "*definitively*" allege that consumers understand destination charges to be "profit neutral." Appx15 (emphasis added).

Plaintiffs timely appealed. Appx1–4.

## Summary of Argument

### I.   The complaint plausibly establishes that FCA's practice misleads consumers and therefore violates the NJCFA.

The NJCFA is one of the nation's strongest consumer-protection statutes. When a company engages in a practice that runs contrary to reasonable consumers' expectations, it violates the NJCFA.

Plaintiffs packed their complaint with factual details about the automotive industry and, specifically, what consumers expect of destination charges. The district court repeatedly and improperly failed to credit those allegations, all while drawing inferences in FCA's favor. Most notably, the district court reasoned that Plaintiffs' allegations failed to "*definitively*" establish that consumers expect destination charges to be profit-free. This analysis ran afoul of black-letter law, which required the district court to take all well-pled facts as true and to draw all reasonable inferences in Plaintiffs' favor. This was reversible error.

This Court's *de novo* review will reveal a complaint that plausibly alleges three types of NJCFA violations, even though only one is necessary to reverse.

First, FCA engaged in a deceptive practice. By marking up its delivery surcharge to generate profit but still calling it a "destination charge," FCA deviated from the norms of the automotive industry as well as consumer expectations. Industry sources, like *Consumer Reports*, *J.D. Power*, and *Cars.com*, as well as executives from major brands like Ford and Nissan, have all told consumers that "destination charges" constitute a straight pass-along cost and *not* profit.

Second, FCA engaged in an unconscionable practice. FCA imposes the destination charge as a nonnegotiable surcharge that consumers must pay. And FCA does this specifically to thwart price competition and comparison shopping, enabling it to charge more money without offering additional value and without impacting consumer demand. The complaint cites automotive advertising, marketing studies, and historical vehicle-pricing changes to support these allegations.

Third, FCA's failure to disclose the profit in its destination charge is an actionable omission. FCA's choice to use the term of art "destination charge" conveyed to Plaintiffs that the surcharge merely recouped FCA's delivery costs. But since it also included substantial extra profit for FCA, FCA was required to disclose that fact, and it failed to do so.

18

**II.    The complaint also alleges two viable common-law claims.**

The complaint also alleges claims for money had and received and unjust enrichment. The district court dismissed these claims for many of the same reasons as the NJCFA claims. Because the Court should reverse that dismissal, it should reverse as to these claims too.

**III.    Non-precedential decisions from other courts do not support dismissing the complaint here.**

Finally, other cases challenging destination charge practices do not support dismissing this complaint. None of those decisions are binding here, nor should they be considered persuasive.

This short line of decisions stems primarily from a single unpublished Ninth Circuit decision, *Romoff v. General Motors, LLC*. In *Romoff*, plaintiffs challenged General Motors' destination-charge practice.

But the *Romoff* complaint differed dramatically from Plaintiffs' complaint here. The *Romoff* complaint alleged no facts about how the term "destination charge" is used in the automotive industry—and thus how it is understood by reasonable consumers. So, the district court there resorted to Merriam-Webster Dictionary's definition of the word "charge" to conclude that a reasonable consumer would not expect it to be profitless. In

a short, unpublished memorandum disposition, the Ninth Circuit affirmed, reasoning that the plaintiffs had alleged General Motors charged its *dealers* the destination charge—not the end *consumer*. Plaintiffs here allege the opposite. So this Court need not follow *Romoff*, nor should it.

Two other non-binding cases followed *Romoff*'s flawed reasoning. The first, *Gunn v. FCA US, LLC*, was decided in the same circuit as *Romoff*, and the district court has yet to act on FCA's motion to dismiss the amended complaint. The second, *Beeney v. FCA US, LLC*, is on appeal in the Third Circuit, so this Court will have the last word both here and in *Beeney*.

### Standard of Review

This Court reviews the grant of a motion to dismiss *de novo. Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022).

In its review, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

If the complaint includes allegations that "plausibly suggest[ ]" the Court may "draw the reasonable inference that the defendant is responsible for the misconduct alleged," the dismissal must be reversed. *Princeton*, 30 F.4th at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## Argument

## I.    The complaint plausibly alleges that FCA's practice—labeling its delivery surcharge a "destination charge," despite marking it up to generate hidden profit—could mislead reasonable consumers and thus violates the NJCFA.

The complaint plausibly alleges that FCA's destination charge violates New Jersey law.

The allegations should be reviewed in light of the broad remedial goals of the NJCFA, "one of the strongest consumer protection laws in the nation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 915 (3d Cir. 2018) (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 460 (N.J. 1994)). The statute's text "evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." *Id.* at 916 (quoting *Lemelledo v. Beneficial Mgmt. Corp.*, 696 A.2d 546, 551 (N.J. 1997)). The NJCFA "should be construed liberally in favor of

consumers" and be interpreted in line with its history of "constant expansion of consumer protection." *Id.* at 915 (first quoting *Cox*, 647 A.2d at 461; then quoting *Gennari v. Weichart Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997)).

Plaintiffs have pled three types of NJCFA violations: (a) a deceptive practice, (b) an unconscionable practice, and (c) the "omission" of a "material fact" in connection with a sale. *See* N.J. Stat. Ann. § 56:8-2. Under the statute, the "prime ingredient" of all three types of violations is the "capacity to mislead" reasonable consumers. *Cox*, 647 A.2d at 462.

## A. The complaint plausibly establishes a deceptive practice since FCA's conduct has the capacity to mislead reasonable consumers.

To begin, Plaintiffs' complaint states a claim for a deceptive practice under the NJCFA.

A deceptive business practice is one that has the capacity to mislead reasonable consumers. *Id.* Deception hinges on whether a practice "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Harnish v. Widener Univ. Sch. of L.*, 931 F. Supp. 2d 641, 648 (D.N.J. 2013) (quoting *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003)). Both "false" and

22

"misleading" statements may qualify as deceptive. *Hawkins v. Globe Life Ins. Co.*, 105 F. Supp. 3d 430, 446 (D.N.J. 2015) (quoting *Belmont Condo. Ass'n, Inc. v. Geibel*, 74 A.3d 10, 27 (N.J. Super. Ct. App. Div. 2013)).

Courts analyze the impression created by a challenged statement by "consider[ing] the effect" of the statement on a consumer operating "with an ordinary and unsuspecting mind." *Miller v. Am. Fam. Publishers*, 663 A.2d 643, 653 (N.J. Super. Ct. 1995) (quoting *USPS v. Allied Treatment, Inc.*, 730 F. Supp. 738, 739 (N.D. Tex. 1990)).

Whether a statement has the capacity to mislead is not generally decided at the motion-to-dismiss stage. *See, e.g.*, *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 126 (D.N.J. 2003) (concluding a "capacity to mislead" question is "clearly" meant for a jury to answer). The question is instead reserved "ordinarily for the trier of fact" to decide. *Leon v. Rite Aid Corp.*, 774 A.2d 674, 678 (N.J. Super. Ct. App. Div. 2001) (quoting *Chattin v. Cape May Greene, Inc.*, 524 A.2d 841, 852 (N.J. Super. Ct. App. Div. 1987)). New Jersey courts recognize that juries are "especially well suited" to determine the impact of a statement on "an average consumer." *Id.*; *see also Nafar v. Hollywood Tanning Sys., Inc.*, No. 06-cv-3826, 2007 WL 1101440, at *8 (D.N.J. Apr. 10, 2007) (a court "cannot, at the pleading stage and before

23

discovery, determine as a matter of law 'what the average consumer knows or should know.'").

Here, the complaint pleads detailed facts that show FCA's practice stands outside the industry norm and has the capacity to mislead. The complaint is bursting with reputable automotive sources that have long delivered a uniform message to consumers: a "destination charge" does *not* include profit. Appx159–64 ¶¶ 110–18. Instead, by using the term "destination charge," an automaker represents "straight pass-along costs" that "aren't a money-making line item." Appx162–63 ¶ 115 & nn.91, 94.

Among the examples in the complaint, an industry insider (who worked for both Ford and Nissan) explains that destination charges are "intentionally a profit neutral activity"; automakers "aren't supposed to hide profit in the field." Appx160 ¶ 112. Likewise, prominent watchdog *Consumer Reports* wrote that a destination charge "covers the cost to deliver the vehicle from the factory to the dealership . . . . It's a straight pass-along cost." Appx162–63 ¶ 115 & n.94. The purpose of a destination charge, according to *Consumer Reports*, is simply "to recoup the expenses associated with . . . transportation," not to tack on profit. *Id.*

24

These examples, together with many other allegations in the complaint, demonstrate the reasonable expectation that a "destination charge" will recoup the automaker's shipping costs—and nothing more. Appx159 ¶ 110. As a matter of black-letter law, the district court was required to accept these well-pled and plausible allegations as true. *Bruni*, 824 F.3d at 360.

Because the profit hidden in FCA's destination charge could surprise a reasonable consumer, it's plausible that FCA's practice has the capacity to mislead. The decision in *Barry v. Arrow Pontiac, Inc.* demonstrates this point. There, the Supreme Court of New Jersey held that a car dealership's use of the term "dealer invoice" was deceptive under the NJCFA when it described an amount not equal to the actual cost to the dealership. 494 A.2d 804, 809–12 (N.J. 1985). The key inquiry for the court was whether the term "dealer invoice" was "capable of misleading or deceiving" consumers about how much the dealership paid a manufacturer for a vehicle. *Id.* at 810–11 & n.6.

The *Barry* court concluded that a reasonable consumer might be misled into viewing the "dealer invoice" amount as "the final cost" to the dealer, so the consumer "would mistakenly believe that his bargain is

greater than it may actually be." *Id.* at 810. To support that conclusion, the

court recognized that "members of the public are often unaware of the

technical meanings of such terms as 'fees' and 'costs.'" *Id.* (quoting *Zauderer*

*v. Off. of Disciplinary Counsel of Sup. Ct.*, 471 U.S. 626, 653 (1985)). Given this,

the court found that under the proper NJCFA standard—whether the term

was "misleading to the average consumer, not whether it can later be

explained to the more knowledgeable, inquisitive consumer"—the

dealership's use of "dealer invoice" violated the NJCFA. *Id.* at 811–12 & n.6.

The Supreme Court of New Jersey's reasoning applies here, too. In

*Barry*, reasonable consumers could see the term "dealer invoice" and

understand it to refer to the dealer's costs. When consumers were offered

vehicles at a price below the "dealer invoice," they may have been misled

into believing that their "bargain is greater" than in reality. *Id.* at 810. So

too, here. A reasonable FCA customer may see the term "destination

charge" and understand it refers specifically to delivery costs—especially

in light of the chorus of trusted industry sources telling consumers that

these costs are precisely what a "destination charge" is. *See supra* at pp. 12–

13; Appx159–64 ¶¶ 110–18. And with that understanding, the customer

may "mistakenly" (and reasonably) "believe that his bargain is greater" than it is. *Barry*, 494 A.2d at 810.

It's worth noting that in both instances—"dealer invoice" and "destination charge"—the dollar amount to be paid is not hidden. The consumer is not told, for example, that the vehicle will cost $25,000 only to later be presented with a $28,000 bill. Instead, the deceptive conduct is using a term that misleadingly *describes* the charge. In *Barry*, the label "dealer invoice" deceptively conveyed that it was equal to the dealer's costs. *Id.* Here, the complaint alleges the term "destination charge" deceptively conveyed that the amount was equal to FCA's delivery costs. Because a reasonable consumer might be misled by FCA's practice, Plaintiffs have stated a claim under the NJCFA.

But the district court did not accept the complaint's allegations about how the term "destination charge" is used and understood. This was error. Time and again, the court refused to credit the complaint's allegations and to draw reasonable inferences in Plaintiffs' favor:

- The district court held that "the term 'charge' did not imply an absence of profit." Appx15. But the word "charge," in isolation, is not at issue. The complaint's allegations show that, in the auto industry, the two-word term "destination charge" conveys a well-known

meaning. Appx159–64 ¶¶ 111–18. That term of art conveys "a straight pass-along cost"—with no profit included. Appx162–63 ¶ 115 & n.94.

- The district court also disregarded certain allegations about what the term "destination charge" means in the industry. It opted to ignore, for example, all sources of information that were not from FCA itself. Appx15–16. But district courts must "take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) (applying New Jersey and other states' laws). It was sufficient in *Barry*, for example, that the defendant said nothing beyond "dealer invoice," because external context gave meaning to that term. *See* 494 A.2d at 810. The complaint here does that and goes further still by alleging a general, industry-understood meaning of the term "destination charge" contrary to FCA's practice. Appx159–64 ¶¶ 111–18.

- In casting aside these allegations, the district court also reasoned that these allegations did not establish that consumers understand the term "destination charge" to be "*definitively* profit neutral." Appx15 (emphasis added). That is not the standard that Rule 12(b)(6) demands. Rather than requiring Plaintiffs to show their claims will prevail "definitively," the court was obligated to deny FCA's motion if the complaint just "plausibly suggest[s]" its claims. *Princeton*, 30 F.4th at 342 (quotation omitted).

- Finally, the district court also disregarded a statement made by a spokesperson for Chrysler, one of FCA's brands. The spokesperson told *Cars.com* that the destination charge was "based on our costs to deliver a new vehicle." Appx160–61 ¶ 113. Rather than inferring that the phrase "based on our costs" means that the

destination charge is recouping costs and not arbitrarily inflated to generate profit, the district court improperly drew inferences in FCA's favor. The court was required to draw those inferences in Plaintiffs' favor, not FCA's. *Bruni*, 824 F.3d at 360; *Princeton*, 30 F.4th at 342 (quotation omitted).

Each of these examples involves a misapplication of the Rule 12 standard for construing a complaint on a motion to dismiss. *See supra* at pp. 20–21 (Standard of Review).

A district court cannot "indulg[e] its skepticism" about a plaintiff's claim when the claim arises from "allegations and the reasonable inferences that can be drawn from them." *Doe v. Univ. of Scis.*, 961 F.3d 203, 210 n.3 (3d Cir. 2020). But here, the district court did just that—over and over again. That was improper on a motion to dismiss and provides multiple bases for reversal.

The district court also erred in its recitation of the NJCFA standard. One of the court's bases for dismissal was that the complaint alleges no "false" statement. Appx14–15. But Plaintiffs do not need to allege a false statement. The NJCFA bans "false *or* misleading" statements. *Hawkins*, 105 F. Supp. 3d at 446 (quoting *Belmont*, 74 A.3d at 27). Plaintiffs allege facts

showing a reasonable consumer could be misled by FCA's use of the term "destination charge."

Finally, the district court erred by focusing on whether FCA concealed or hid the *amount* of the destination charge. As discussed above in the context of *Barry*, the amount need not be hidden to be deceptive. *Barry*, 494 A.2d at 810; *see also supra* at p. 27. By labeling its charge to convey one thing (a pass-through charge solely recouping delivery costs), while actually using that charge for another (substantial profit), FCA engaged in a misleading sleight of hand.

The district court erred in dismissing the "deceptive practice" claim under the NJCFA. The complaint's allegations are sufficient to survive FCA's motion to dismiss this claim.

### B.    FCA's practice also qualifies as unconscionable.

FCA's practice is also unconscionable under the NJCFA.

Claims for unconscionable practices are subject to a similar legal standard as deceptive claims. Because deception and unconscionability are both "affirmative act" claims, the NJCFA again requires a plaintiff to allege that the challenged practice "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Harnish*,

931 F. Supp. 2d at 641 (quoting *N.J. Citizen Action*, 842 A.2d at 177). Again, the capacity to mislead a reasonable consumer is the "prime ingredient." *Cox*, 647 A.2d at 462.

Despite those similarities, unconscionability is distinct from deception under the statute. There is no "precise formulation" of what is unconscionable under the NJCFA. *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013). Courts are thus empowered to "pour content" into the unconscionability concept. *Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1067 (N.J. 1988) (quoting *Kugler v. Romain*, 279 A.2d 640, 651 (N.J. 1971)). In essence, "[w]hether a particular practice is unconscionable must be determined on a case-by-case basis." *Assocs. Home Equity Servs., Inc. v. Troup*, 778 A.2d 529, 543 (N.J. Super. Ct. App. Div. 2001).

This determination is usually a question of fact. If "a reasonable juror could conclude" that the defendant's business practice might result in "unfair surprise," the question of unconscionability should go to a jury and not be decided on the pleadings. *Id.* at 544; *see also Szczubelek*, 215 F.R.D. at 126 (whether defendant's actions were unconscionable was "clearly [a] question[ ] of fact for a jury to answer").

New Jersey courts have recognized unconscionability when a seller charges an "exorbitant" price that bears little relation to the value actually provided to the consumer. *Kugler*, 279 A.2d at 653–54. The Supreme Court of New Jersey has observed that the NJCFA's drafters "accepted the premise that the market bargaining process does not protect ordinary consumers from serious damage in a large number of transactions." *Id.* at 648; *see also James v. Glob. Tel*Link Corp.*, No. 13-cv-4989, 2018 WL 3736478, at *8 (D.N.J. Aug. 6, 2018) (describing *Kugler* as the "keystone interpretation" of the NJCFA).

Courts applying New Jersey law have repeatedly followed *Kugler*, finding unconscionability when "exorbitant prices . . . have little or no value to the customer" or the defendant "mislead[s]" the consumer "as to what payment of the fee entails." *In re Nat'l Credit Mgmt. Grp., LLC*, 21 F. Supp. 2d 424, 452 (D.N.J. 1998) (quoting *Kugler*, 279 A.2d at 644).

The bar is lower for a plaintiff to plead an NJCFA violation based on an unconscionable practice when compared to a deceptive one. Here, the plaintiff need not allege any "affirmative fraudulent statement, representation, or omission." *Katz v. Live Nation, Inc.*, No. 09-cv-3740, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010). Instead, the types of facts a

plaintiff must allege are simply those showing a "lack of good faith, fair dealing, and honesty," *id.* (quoting *Cox*, 647 A.2d at 462), or a practice that could result in "unfair surprise" to the consumer, *Troup*, 778 A.2d at 544 (quoting *Jefferson Loan Co., Inc. v. Livesay*, 419 A.2d 1164, 1169 (N.J. Dist. Ct. 1980)).

Under these principles, Plaintiffs' complaint plausibly alleges an unconscionable-practice claim.

Plaintiffs allege *why* FCA marks up its delivery surcharge: so it can advertise artificially low MSRPs. Appx157–59 ¶¶ 107–09. As the complaint details, consumers comparison shop based on MSRPs—not ancillary fees like destination charges. Appx126–32 ¶¶ 58–64. FCA's destination charge practice allows it to make more money without providing any more value in return.

Plaintiffs also allege *how* FCA pulls off its pricing trick. Unlike MSRPs, destination charges are known to be nonnegotiable. Appx133–35 ¶¶ 67–68. FCA knows this is the case. Appx135 ¶ 69. So FCA realized it could guarantee itself a consistent margin by building profit into the destination charge. *Id.* A surcharge that is "unilaterally fixed" and "not

open to negotiation" raises a "strong inference of imposition" and suggests unconscionability. *Kugler*, 279 A.2d at 652–53.

Further, FCA preys on well-documented heuristics that manipulate ordinary consumers. FCA discovered that it could advertise superficially low MSRPs by shifting dollars that would otherwise increase the MSRP into the lesser-noticed destination charge. *See supra* at p. 11 (describing partition pricing). This allowed FCA to extract more profit than it could have by raising MSRPs alone. *See generally* Appx136–49 ¶¶ 72–91; *see also* Appx137–38 ¶ 76.

The complaint also alleges that FCA's destination charges are disproportionate to the value they provide. FCA imposes, by far, the highest destination charges in the industry, Appx153 ¶ 98 (illustrating a 90% increase in FCA's destination charges over ten years), with recent model-year charges approaching $2,000. *See, e.g.*, Appx120–21 ¶ 42 (showing Plaintiff Arroyo paid a destination charge of $1,895). FCA's destination charges have risen even as its underlying transportation costs have gotten cheaper. Appx154–57 ¶¶ 100, 103–05. The NJCFA was enacted to ensure that sales contracts result "from real bargaining between parties who had freedom of choice" and the "ability to negotiate in a meaningful

fashion." *Kugler*, 279 A.2d at 651–52. But instead, the profit packed into FCA's destination charge provides "little or no value" to its customers, *Nat'l Credit*, 21 F. Supp. 2d at 452 (quotation omitted), and is "excessive in relation" to FCA's "costs," *Kugler*, 279 A.2d at 644.

Since Plaintiffs have alleged facts supporting an inference that FCA's destination-charge practice is unconscionable, the district court should not have resolved this question in FCA's favor on a motion to dismiss. Compounding its earlier errors, however, the court yet again declined to credit well-pled allegations, failed to draw reasonable inferences in Plaintiffs' favor, and failed to apply the correct legal standard under the NJCFA. In particular, the district court made three errors in its unconscionability analysis.

*First*, the district court held that the complaint did not allege that Plaintiffs were "thwarted from comparison shopping before agreeing to pay FCA's disclosed fee." Appx17. But the complaint contains detailed facts showing how FCA's practice subverts price competition. It explains how:

- Price competition in the auto industry centers around the MSRP, Appx126–27 ¶ 58, Appx131–32 ¶ 64;

- Consistent with industry norms, FCA's advertisements highlight the MSRP (and never mention destination charges), Appx127–31 ¶¶ 59–63;

- By inflating its destination charge, FCA is able to keep its MSRP artificially low, Appx135–36 ¶¶ 70–71;

- Marketing studies show that consumers focus on base prices (like the MSRP) and fail to take note of ancillary charges (like the destination charge) when comparison shopping, Appx136–49 ¶¶ 72–91; and

- The destination charge is a nonnegotiable add-on charge that consumers are told they inevitably must pay, Appx133–35 ¶¶ 67–68, and Plaintiffs did in fact pay, Appx110–21 ¶¶ 11–13, 17–19, 23–25, 29–31, 35–37, 40–42.

All of this leads plausibly to the conclusion that FCA's marked-up destination charge thwarts comparison shopping.

*Second*, the district court erred by determining the destination charge was not "illusory" because some of it went toward FCA's vehicle delivery costs. Appx19–20. This is a misapplication of the NJCFA standard. Under the statute, a charge can be unconscionable even if part of it is used for what a consumer expects. In *Kugler* (the "keystone interpretation" of the NJCFA, *James*, 2018 WL 3736478, at *8), a book-sales practice was held unconscionable by the Supreme Court of New Jersey when the sales price

was excessive "in relation to defendant's cost and the value to the consumers" who bought and received the books. 279 A.2d at 654.

*Finally*, the district court erred by relying on this Court's unpublished decision in *Ciser v. Nestle Waters North America Inc.*, 596 F. App'x 157 (3d Cir. 2015).[3] In *Ciser*, a consumer paid late fees, then sued, alleging the late fees were "grossly disproportionate" and unconscionable. *Id.* at 157–58. The Third Circuit rejected his argument. *Id.* at 162–63. The district court here reasoned that *Ciser* blessed the inclusion of "a measure of profit" in any type of fee. Appx19. But *Ciser* does not go that far. It certainly does not say anything about "destination charges," the meaning of which is backed by numerous auto-industry sources. Appx133–35 ¶¶ 67–68.

In sum, the complaint alleges sufficient facts to plead an NJCFA claim for an unconscionable practice. The district court erred when it dismissed this claim.

---

[3] Unpublished decisions are not binding precedent, and this Court designates them as unpublished because they "appear[ ] to have value only to the trial court or the parties." 3d Cir. I.O.P. 5.3. "Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing." 3d Cir. I.O.P. 5.7.

### C.    FCA omitted a material fact about its destination charge.

The complaint alleges a third and final NJCFA violation: the omission of a material fact.

A defendant violates the NJCFA through its omission when it "(1) knowingly conceals (2) a material fact, (3) with the intention that the consumer rely upon the concealment." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 559 (D.N.J. 2013). A plaintiff must also make a showing of a duty to disclose, which can arise if disclosure is "necessary to make a previous statement true," *id.* at 560, like when a defendant said something that could mislead absent elaboration, *see Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d, 194, 234–36 (D.N.J. 2020).

In dismissing this claim, the district court decided that Plaintiffs failed to plead two elements: a material fact and a duty to disclose. Both holdings failed to consider well-pled allegations.

To start with the first of the two, materiality asks whether a reasonable person "would attach importance" to the fact in question in "determining his choice of action." *Suarez v. E. Int'l Coll.*, 50 A.3d 75, 89 (N.J. 2012) (quoting Restatement (Second) of Torts § 538(2) (Am. Law. Inst. 1977)). Courts recognize that "[d]etermining the materiality" of an

"omission is a question of fact, not a question of law," *Nafar*, 2007 WL 1101440, at *8, and therefore have regularly declined to decide the issue on a motion to dismiss. *See, e.g.*, *id.*; *Schwartz v. Avis Rent A Car Sys.*, No. 11-cv-4052, 2012 WL 12909908, at *5 (D.N.J. Sept. 18, 2012) (declining to find a fee of 75 cents immaterial as a matter of law).

To establish materiality, Plaintiffs allege they each paid hundreds of dollars beyond the true delivery costs that FCA incurred and which its "destination charge" supposedly recoups. Appx107–08 ¶ 4; Appx110–21 ¶¶ 11–13, 17–19, 23–25, 29–31, 35–37, 40–42; Appx200–01 ¶ 198. The district court erred by finding a lack of materiality as a matter of law. Whether consumers attach importance to overpaying hundreds of dollars raises a fact issue not properly decided on the pleadings. *See Nafar*, 2007 WL 1101440, at *8. And while the district court held the complaint fails to allege that Plaintiffs would not have purchased or leased their vehicles had FCA disclosed its markup, the court overlooked a paragraph alleging just that: Plaintiffs allege that they bought vehicles at prices they would not have paid, but for FCA's conduct. Appx200–01 ¶ 198.

The complaint further alleges detailed facts about consumer behavior showing that consumers will buy products more frequently at lower prices

with surcharges tacked on than at the accurate all-in price. Appx139–42 ¶¶ 79–81. This means the complaint plausibly alleges consumers would not have paid as much for FCA vehicles if the profit within the destination charge had instead been advertised in the MSRP. The court's materiality analysis thus misapplied the legal standard and failed to give necessary credit to the complaint's well-pled allegations.

Turning to the other element at issue, the district court found that FCA was under no duty to disclose its markup for two reasons: (1) the complaint lacks allegations to support the inference that "FCA ever referred to its 'destination charge' as being equal to the 'underlying delivery costs,'" and (2) FCA provided the sole disclosure required by the Automobile Information Disclosure Act (AIDA). Appx20–21.

The district court erred in both respects.

Above, Plaintiffs explained how FCA's "destination charge" label conveys a lack of profit. *See supra* at pp. 12–13; Appx159–64 ¶¶ 111–18. By using that term, but then marking up its charge contrary to the term's typical use, FCA incurred a duty to disclose that markup so as to not mislead consumers absent elaboration. *Ponzio*, 447 F. Supp. 3d, at 234–36.

The district court disregarded these allegations, violating the applicable pleading standards.

The district court's second point of analysis fares no better. Whether or not AIDA creates a duty to disclose is not at issue. Plaintiffs did not sue for a violation of AIDA. Instead, they allege that the NJCFA requires disclosure because, without that disclosure, consumers will be misled by the "destination charge" label that FCA used. *See* Appx159–64 ¶¶ 110–18. The district court's task was to determine whether a duty to disclose exists under the NJCFA. By focusing instead on disclosure requirements under a different statute, the district court applied the wrong analysis.

Because the complaint alleges facts sufficient to state an omission claim, the district court erred by dismissing this NJCFA claim, too.

*      *      *

This Court should reverse as to all three NJCFA claims.

## II.    The complaint states viable common-law claims.

In addition to the NJCFA claims, the complaint also plausibly alleges claims for money had and received and unjust enrichment. Here too, the district court's rationale for dismissal ran afoul of the Rule 12 pleading

standard: it failed to credit well-pled allegations or draw reasonable inferences in Plaintiffs' favor.

These claims require that FCA "received a benefit and that retention of that benefit without payment would be unjust." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 240 (3d Cir. 2020) (unjust enrichment); *see also Dougherty v. Drew Univ.*, 545 F. Supp. 3d 363, 381 (D.N.J. 2021) (explaining the elements of a money had and received claim are "essentially the same as those for unjust enrichment").

The complaint alleges facts to support these common-law claims. FCA received a benefit in the form of money from Plaintiffs earmarked to pay FCA's delivery costs. But FCA did not actually use the money to pay its delivery costs. Appx107–08 ¶ 4. Instead, FCA kept a substantial portion as profit. Appx196 ¶ 183, Appx202 ¶ 203. The profit portion of the destination charge is a benefit paid by Plaintiffs to FCA for delivery costs (not profit), so it would be unjust for FCA to retain it. *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 734–35 (D.N.J. 2008); *see also Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 331 (D.N.J. 2014) (unjust enrichment alleged where defendant "retain[ed] the revenues" from "mislabel[ed]" products).

42

The district court's two bases for dismissal were erroneous. First, the court found no "inequity" because FCA disclosed the *amount* of its charge. Appx22. But, as with the NJCFA above, the inequitable conduct was the inclusion of hidden profit in a "destination charge," not that FCA hid the dollar amount. Appx107–08 ¶ 4; *see supra* at pp. 27, 30. Second, the district court held that the complaint does not "involve[ ] specific allegations of wrongdoing or failure to perform." Appx23. This again overlooks the well-pled facts and draws inferences in FCA's favor, rather than Plaintiffs'.

The district court erred in dismissing both common-law claims.

## III. Non-binding decisions from other courts do not override the well-pled facts alleged or the expansive nature of the NJCFA.

The robust complaint and powerful New Jersey consumer-protection statute in this case distinguish it from three other cases involving challenges to destination-charge practices. Two of those cases were brought against FCA and involve similar factual allegations, but different plaintiffs and state laws underlying their claims. *See Beeney v. FCA US, LLC*, No. 24-2519 (3d Cir.) (involving eleven states' laws, not including New Jersey); *Gunn v. FCA US, LLC*, No. 22-cv-2229 (N.D. Cal.) (involving California law only); *see also supra* at p. 3 (Statement of Related Cases). Neither *Beeney* nor

*Gunn* have been resolved as of January 27, 2025. *Beeney* is on appeal before this Court with briefing ongoing, and FCA's motion to dismiss the operative complaint in *Gunn* is pending before the United States District Court for the Northern District of California.

The other case relating to destination charges did not involve FCA, nor did it include the distinct, outcome-determinative factual allegations in the complaint here. *See Romoff v. Gen. Motors LLC*, 574 F. Supp. 3d 782 (S.D. Cal. 2021). While *Romoff* involved claims brought under multiple state consumer protection statutes including the NJCFA, the complaint in *Romoff* provided no details about how the term "destination charge" is used in the automotive industry—and thus how it is understood by reasonable consumers. So, to reach its conclusion in dismissing that complaint, the district court there resorted to looking up the Merriam-Webster Dictionary's definition of the word "charge." *Id.* at 788. The court concluded the word "charge" "does not reasonably imply an absence of profit." *Id.*

A panel of the Ninth Circuit affirmed in an unpublished memorandum order, albeit on different grounds. That court concluded the *Romoff* plaintiffs had alleged GM's destination charge "is charged to the

44

dealers and paid by them to GM." *Romoff v. Gen. Motors LLC*, No. 22-55170, 2023 WL 1097258, at *1 (9th Cir. Jan. 30, 2023) (unpublished).[4] Focusing on General Motors' charge to the dealer, the court found no unlawful conduct. *Id.*

The complaint here differs markedly from the allegations relied upon by the *Romoff* courts. Most fundamentally, Plaintiffs here included many pages of detailed allegations showing that consumers do *not* understand "destination charge" to include profit. And, unlike in *Romoff*, Plaintiffs focus on a surcharge imposed by FCA on consumers — they do not take issue with any charge involving dealerships. Appx132–33 ¶ 66 & n.25.

In this case, the complaint does not allege any meaningful role for dealerships. They are not the ones who pay freight companies to deliver FCA vehicles. Nor are they the ones who set the surcharge imposed on customers. FCA is the entity that presents consumers with the destination charge, and FCA is the entity that retains the profits. Appx132–33 ¶ 66. The

---

[4] As in this Court, *see* 3d Cir. I.O.P. 5.3, 5.7, unpublished memorandum dispositions are "not only officially nonprecedential but also of little use to district courts or litigants" and are "not appropriately used as the pivotal basis for a legal ruling" in the Ninth Circuit. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020); *see also supra* n.3.

Ninth Circuit's unpublished analysis of the interplay between General

Motors' dealerships and consumers who buy General Motors vehicles is of

no relevance here.

This Court need not follow *Romoff* (or *Gunn*), and it should not.

Plaintiffs' complaint plausibly alleges claims under the NJCFA and

common law.

## Conclusion

The complaint is full of well-pled facts alleging FCA's destination

charge has the capacity to mislead a reasonable consumer. With the benefit

of *de novo* review, Plaintiffs respectfully request that this Court reverse the

district court's order dismissing the complaint and hold that Plaintiffs have

pled viable claims under New Jersey law.


Dated: January 27, 2025                 Respectfully submitted,


                                        /s/ *Spencer Hughes*
                                        Spencer S. Hughes (CA Bar No. 349159)
                                        David Stein (CA Bar No. 257465)
                                        Sara Delaney Brooks (CA Bar No. 348125)
                                        **Gibbs Law Group LLP**
                                        1111 Broadway, Suite 2100
                                        Oakland, CA 94607
                                        Tel.: (510) 350-9700
                                        Fax: (510) 350-9701

shughes@classlawgroup.com
ds@classlawgroup.com
db@classlawgroup.com

Samantha Braver (NY Bar No. 5916168)
**Handley Farah & Anderson PLLC**
33 Irving Place
New York, NY 10003
Tel.: (212) 843-9181
Fax: (844) 300-1952
sbraver@hfajustice.com

Joseph J. DePalma (NJ Bar No. 2151982)
**Lite DePalma Greenberg & Afanador, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com

*Counsel for Appellants*

## Certificate of Compliance

Pursuant to Fed. R. App. P. 32(g), I, Spencer S. Hughes, certify the following:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 8,733 words (exclusive of the portions exempted by Fed. R. App. P. 32(f)), which are fewer than the maximum of 13,000 words allowed for a party's principal brief.

2.      This brief complies with the typeface and formatting requirements of Fed. R. App. P. 32(a)(5) and (6) and 3d Cir. L.A.R. 32.1(c) because it has been written in 14-point Book Antiqua font, which is a proportionally spaced font set in plain, roman style.

3.      This brief complies with the electronic-filing requirements of Local Rule 31.1(c) because the text of the electronic submission and paper copies are identical.

4.      Vipre Virus Protection, Version 3.1 was used to scan the electronic file of the brief before its submission, and no viruses were detected.

Dated: January 27, 2025                              _/s/ Spencer Hughes_____

**Certificate of Service**

I hereby certify that on this 27th day of January 2025, I caused to be served a true and correct copy of the foregoing document on all counsel of record by electronically filing it via the CM/ECF system. All counsel of record are registered CM/ECF users and will be served via that platform.

/s/ *Spencer Hughes*
Spencer S. Hughes

**Certificate of Bar Membership**

Pursuant to Local Rule 28.3(d) and Local Rule 46.1(e), I hereby certify

that I, Spencer S. Hughes, am admitted to the Bar of the United States

Court of Appeals for the Third Circuit.


Dated: January 27, 2025                    /s/ *Spencer Hughes*

No. 24-3202

In the United States Court of Appeals for the Third Circuit

**BCR CARPENTRY LLC, KIMBERLY ENRIGHT,
WILLIAM DEMOLA, MICHAEL BENT, and AMY ARROYO,**
**on behalf of themselves and all others similarly situated,**

*Plaintiffs-Appellants,*

v.

**FCA US, LLC,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of New Jersey
Case No. 21-cv-19364-GC (Hon. Georgette Castner)

**VOLUME 1 OF JOINT APPENDIX (APPX1 TO APPX24)**

David Stein
Spencer S. Hughes
Sara Delaney Brooks
**Gibbs Law Group LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel.: (510) 350-9700

Samantha Braver
**Handley Farah & Anderson PLLC**
33 Irving Place
New York, NY 10003
Tel.: (202) 559-2433

Joseph J. DePalma
**Lite DePalma Greenberg &
Afanador, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000

*Counsel for Appellants*

i

## TABLE OF CONTENTS

**Page**

### <u>Volume 1</u>

Notice of Appeal, dated November 22, 2024............    A1

Memorandum Opinion of the Honorable Georgette
    Castner, dated October 23, 2024,
    Appealed From ......................................................    A5

Order of the Honorable Georgette Castner, dated
    October 23, 2024, Appealed From.........................    A24

### <u>Volume 2</u>

District Court Docket Entries ....................................    A25

Consolidated Amended Class Action Complaint,
    dated April 26, 2023 .............................................    A37

Opinion of the Honorable Georgette Castner, dated
    December 22, 2023................................................    A78

Order of the Honorable Georgette Castner, dated
    December 22, 2023................................................    A101

Second Amended Class Action Complaint, dated
    January 29, 2024...................................................    A103

    Exhibit A to Second Amended Class Action
    Complaint -
    Excerpts of Legislative History .............................    A209

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BCR CARPENTRY LLC, KIMBERLY ENRIGHT, WILLIAM DEMOLA, MICHAEL BENT, and AMY ARROYO, on behalf of themselves and all others similarly situated, | : : : : : : : Civil Action No.: 3:21-cv-19364(GC)(DEA) |
| *Plaintiffs,* | : : : |
| v. | : : |
| FCA US, LLC, | : : |
| *Defendant.* | : : : |

---

## PLAINTIFFS' NOTICE OF APPEAL

---

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Joseph J. DePalma
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Interim Liaison Counsel*

[Additional counsel listed on the signature page]

BCR Carpentry LLC, Kimberly Enright, William Demola, Michael Bent, and

Amy Arroyo, on behalf of themselves and all others similarly situated, appeal to the

United States Court of Appeals for the Third Circuit from the order and

memorandum opinion granting Defendant FCA US, LLC's motion to dismiss, Dkt.

Nos. 73, 74, entered on October 24, 2024.

<div style="margin-left: 40%;">

**LITE DEPALMA GREENBERG &
AFANADOR, LLC**

</div>

Dated: November 22, 2024    <u>*/s/ Joseph J. DePalma*</u>
Joseph J. DePalma
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
jdepalma@litedepalma.com
bgreenberg@litedepalma.com

*Interim Liaison Counsel*

**HANDLEY FARAH & ANDERSON PLLC**
William H. Anderson (*pro hac vice*)
5353 Manhattan Circle, Suite 204
Boulder, CO 80303
Telephone: (303) 800-9109
wanderson@hfajustice.com

**HANDLEY FARAH & ANDERSON PLLC**
Rebecca P. Chang (*pro hac vice*)
33 Irving Street
New York, NY 10003
Telephone: (347) 480-1030
rchang@hfajustice.com

<div style="text-align: center;">1</div>

<div style="text-align: center; border: 1px solid black; display: inline-block;">A2</div>

**GIBBS LAW GROUP LLP**
Rosemary M. Rivas (*pro hac vice*)
David Stein (*pro hac vice*)
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
rmr@classlawgroup.com
ds@classlawgroup.com

*Interim Co-Lead Counsel*

**BARON & HERSKOWITZ**
Jon M. Herskowitz (*pro hac vice*)
9100 S. Dadeland Blvd., Suite 1704
Miami, FL 33156
Telephone: (305) 670-0101
jon@bhfloridalaw.com

**KALIEL GOLD PLLC**
Sophia Gold
1100 15th Street, NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783
sgold@kalielgold.com

*Additional Plaintiffs' Counsel*

A3

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 22, 2024, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to all counsel of record.

*/s/ Joseph J. DePalma*
Joseph J. DePalma

A4

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BCR CARPENTRY LLC, KIMBERLY ENRIGHT, WILLIAM DEMOLA, MICHAEL BENT, and AMY ARROYO, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FCA US, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 21-19364 (GC) (JTQ) <br><br> **MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

      This matter comes before the Court upon Defendant FCA US LLC's Motion to Dismiss the Consolidated Second Amended Class Action Complaint (SAC), (ECF No. 69), pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). Plaintiffs opposed and Defendant replied. (ECF Nos. 69-5 & 69-10.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED.**

I.      <u>**BACKGROUND**</u>

      This putative class action involves allegations that FCA US, LLC (FCA), has unlawfully charged New Jersey consumers, through dealerships, a "destination charge" that includes profit when FCA distributes new model-year 2018 or later vehicles for lease or sale in the United States.

A5

### A.    Procedural Background[1]

The procedural history is set forth in more detail in this Court's December 22, 2023 Memorandum Opinion accompanying its Order dismissing Plaintiffs' First Amended Complaint (FAC).  *See BCR Carpentry LLC v. FCA US, LLC*, Civ. No. 21-19364, 2023 WL 11867230, at *1-3 (D.N.J. Dec. 22, 2023).  On January 22, 2024, following this Court's dismissal Order, (ECF No. 63), Plaintiffs moved for leave to amend their Complaint (ECF No. 65).  Two days later, the Court granted Plaintiffs' request.  (ECF No. 66.)  Plaintiffs thereafter filed the SAC, pleading the same three counts as in the FAC.  FCA then moved to dismiss the SAC.  (ECF No. 69.)  On July 19, 2024, FCA filed a Notice of Supplemental Authority related to a decision in a substantially similar case in which the court denied the plaintiffs leave to amend their complaint.[2]  (ECF No. 72.) Plaintiffs did not respond.

### B.    Factual Background[3]

The Court presumes the reader's familiarity with the underlying facts, which were set forth in this Court's previous Memorandum Opinion.  *See BCR Carpentry LLC*, 2023 WL 11867230, at *2-3.  The Court addresses only the essential facts and the new factual allegations in the SAC.

---

[1]    The Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

[2]    This Court may properly consider FCA's Notice of Supplemental Authority, which notified the Court of a relevant decision entered after briefing on this Motion was completed.  *See Atkins v. Capri Training Ctr., Inc.*, Civ. No. 13-06820, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014) ("[I]f pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments[.]" (citing *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255 (3d Cir.2008)).

[3]    The factual background is taken from the Consolidated Second Amended Class Action Complaint. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

A6

FCA markets and distributes vehicles under the Chrysler, Jeep, Dodge, Ram, Fiat, and Maserati brands. (*Id.* ¶ 46.) Plaintiffs and the putative class members are purchasers and lessers of new, model-year 2018 and later Chrysler, Jeep, Dodge, Ram, Fiat, and Maserati-brand vehicles. (*Id.* ¶ 1.)

Pursuant to the Automobile Information Disclosure Act of 1958 (AIDA), 15 U.S.C. § 1231, *et seq.*, car manufacturers must place a label—commonly known as a "Monroney Sticker"—on the window of each new vehicle before making it available for sale. (ECF No. 67 ¶¶ 135, 142.) The label must list, among other things, the "destination charge." (*Id.* ¶ 150.) According to the AIDA, the destination charge should be "the amount charged, if any, [by the manufacturer] to [a] dealer for the transportation of [an] automobile to the location at which it is delivered to [a] dealer." (*Id.* ¶ 142 (quoting 15 U.S.C. § 1232(f)(3)).) Plaintiffs allege that when manufacturers inflate the amount they charge for the delivery of a vehicle, by including some amount of profit on top of their real costs, this charge is passed on from dealerships directly to consumers. (*Id.* ¶¶ 125, 146.)

Plaintiffs each bought vehicles manufactured by FCA and each paid a destination fee ranging from $1,495 to $1,895. (*Id.* ¶¶ 12-13, 18-19, 24-25, 30-31, 36-37, 41-42.) Plaintiffs allege that the destination charge they agreed to pay for each of their vehicles was materially higher than the actual delivery cost from the manufacturer to the dealership and that they were never informed that the charges were marked up to generate a profit. (*Id.* ¶¶ 13, 14, 19, 21, 25, 27, 31, 33, 37, 39, 42, 44.)

The SAC contains several new allegations aimed at establishing that reasonable consumers do not view destination charges as a means of generating a profit by auto manufacturers. For example, the SAC cites an article quoting an auto industry expert who claims that destination charges are "intentionally [] profit neutral." (*Id.* ¶ 112.) Plaintiffs also cite articles that inform

consumers that "destination fees . . . aren't a money-making line item" but are instead meant to "pass-along cost." (*Id.* ¶ 115.) Plaintiffs reference the Kelley Blue Book for the proposition that "[d]estination fees are not negotiable. No amount of bargaining makes them go away." (*Id.* ¶ 67.) Plaintiffs also reference a statement made by a Chrysler spokesperson—FCA's corporate predecessor—in 2013 that destination fees are "based on our costs to deliver a new vehicle from the assembly plant to the dealership." (*Id.* ¶ 113.)

Plaintiffs allege that the FCA's markup is hundreds of dollars more than other vehicle manufacturers. (*Id.* ¶ 99.) Plaintiffs assert that FCA has increased its destination charges beyond increases in freight costs and inflation. (*Id.* ¶ 100.) FCA's practices in marking-up destination charges prevents consumers from price shopping because destination charges are rarely mentioned in advertisements, which instead focus on a vehicle's Manufacturer's Suggested Retail Price (MSRP). (*Id.* 59-63.) According to the behavioral economists cited by Plaintiffs, this type of profit allocation is a well-known method of manipulating consumers. (*Id.* ¶¶ 72-89.) Taken together, Plaintiffs assert that FCA's practice of including profit in its destination charges allows FCA to sell vehicles with artificially low MSRPs, thus thwarting Congress's goal of ensuring fair competition. (*Id.* 54-57, 70-71.)

## II.   **LEGAL STANDARD**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

For claims of fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Burns v. Stratos*, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  This ordinarily requires "[a] plaintiff alleging fraud . . . [to] support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).  "Rule 9(b)'s 'normally rigorous particularity rule has been relaxed somewhat where the factual information is particularly within the defendant's knowledge or control.'  But even if a relaxed application of Rule 9(b) were warranted . . . , [a plaintiff] would still need to allege facts demonstrating that his [or her] fraud claims are plausible." *Tripati v. Wexford Health Sources Inc.*, 2022 WL 17690156, at *2 n.3 (3d Cir. Dec. 15, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

### III.    <u>DECISIONS FROM SUBSTANTIALLY SIMILAR CASES</u>

As addressed in this Court's prior Memorandum Opinion setting forth the deficiencies in the FAC, *BCR Carpentry LLC*, 2023 WL 11867230, at *4-6, several district courts have dismissed

similar complaints that allege destination fees that include a profit are deceptive, fraudulent, or otherwise improper. *See Romoff v. General Motors LLC*, 574 F. Supp. 3d 782, 784 (S.D. Cal. 2021)*; Gunn v. FCA US, LLC*, Civ. No. 22-02229, 2023 WL 5418736, at *1 (N.D. Cal. Aug. 22, 2023). *Beeney v. FCA US LLC*, Civ. No. 22-00518, 2023 WL 6962116, at *5 (D. Del. Oct. 20, 2023). In *Romoff*, the United States Court of Appeals for the Ninth Circuit affirmed the district court's dismissal with prejudice, concluding that there were insufficient allegations of deception. *See Romoff v. Gen. Motors LLC*, No. 22-55170, 2023 WL 1097258, at *1 (9th Cir. Jan. 30, 2023).

Plaintiffs contend that their new factual allegations—aimed at establishing that reasonable consumers view destination charges as non-negotiable pass-through fees and that FCA undermines competition by profiting from destination fees—cure the deficiencies that led this Court and others to dismiss similar complaints. (*See generally* ECF No. 69-5.) In support of their argument, Plaintiffs claim that "no court has dismissed a complaint containing detailed allegations like those now present here." (*Id.* at 10.) However, after the parties fully briefed this Motion, the United States District Court for the District of Delaware denied the plaintiffs in that case leave to amend their complaint to add the same type of allegations that Plaintiffs allege here in the SAC. *See Beeney v. FCA US LLC*, Civ. No. 22-00518, 2024 WL 3444488, at *1 (D. Del. July 17, 2024). There, the court held that, even in light of Third Circuit precedent requiring courts to freely grant plaintiffs leave to amend their complaints, the amendments would be futile because the plaintiffs "continue to fail to show that customers are not told what the destination charge is and that the dealer is actually charged less than the listed destination charge." *Id.* The court rejected the plaintiffs' contention that adding allegations regarding how reasonable consumers view destination charges would enable their complaint to survive a motion to dismiss:

> Plaintiffs cite several third-party articles or other statements, none made by Defendant, that customers have been told that

6

A10

> destination charges do not include profits. . . . But none of these
> third-party articles or statements show that Defendant itself has
> made deceptive statements or not accurately listed the destination
> charge it charges to the dealers.
>
> [*Id.* (internal citations omitted).]

Finally, the Court found that even if the plaintiffs could prove some deception, they were unable to point to any injury, because they were "fully informed of the destination charge and the manufacturer's suggested retail price and, as is common in the industry, [were] free to negotiate a final price regardless of the listed MSRP and destination charge." *Id.*

## IV.    **DISCUSSION**

Plaintiffs bring three state law claims—money had and received (Count One); violations of the New Jersey Consumer Fraud Act (NJCFA) (Count Two); and unjust enrichment (Count Three).  The Court will first examine Plaintiffs' claims under the NJCFA and then proceed with the common-law claims.  The Court ultimately finds that Plaintiffs still have not plausibly pled their three counts, and their claims will be dismissed.[4]

### A.    **Count Two (New Jersey Consumer Fraud Act)**

In *Cox v. Sears Roebuck & Co.*, the New Jersey Supreme Court supplied a broad overview of the NJCFA's early history:

> In 1960, the Legislature passed the Consumer Fraud Act "to
> permit the Attorney General to combat the increasingly widespread
> practice of defrauding the consumer."  The Act conferred on the
> Attorney General the power to investigate consumer-fraud
> complaints and promulgate rules and regulations that have the force
> of law.  In 1971, the Legislature amended the Act to "give New
> Jersey one of the strongest consumer protection laws in the nation."
> The Legislature expanded the definition of "unlawful practice" to
> include "unconscionable commercial practices" and broadened the

---

[4]    Though Plaintiffs' allegations that FCA has engaged in deceptive practices and omitted material facts may sound in fraud and be subject to Rule 9(b)'s heightened pleading standards, the Court does not reach this argument, because the claims fail under Rule 8's plausibility standard.

A11

> Attorney General's enforcement powers.  That amendment also
> provided for private causes of action, with an award of treble
> damages, attorneys' fees, and costs.  Governor Cahill believed that
> those provisions would provide "easier access to the courts for the
> consumer, [would] increase the attractiveness of consumer actions
> to attorneys and [would] also help reduce the burdens on the
> Division of Consumer Affairs."
>
> [647 A.2d 454, 460 (N.J. 1994) (internal quotations and citations
> omitted).]

The NJCFA's subsequent history has been marked by the "constant expansion of consumer protection," *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997), and the New Jersey Supreme Court has stated that "[t]he language of the [NJ]CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud," *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997) (citing *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804, 811 (N.J. 1985)).  Moreover, "like most remedial legislation, the Act should be construed liberally in favor of consumers." *Cox*, 647 A.2d at 461 (citing *Barry*, 494 A.2d at 811).  This is because "[t]he legislative concern was the victimized consumer, not the occasionally victimized seller." *Channel Companies, Inc. v. Britton*, 400 A.2d 1221, 1221 (N.J. Super. Ct. App. Div. 1979) (citing *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978)).

The principal purpose of the NJCFA's private cause of action is to create "an efficient mechanism to: (1) compensate the victim for his or her actual loss; (2) punish the wrongdoer through the award of treble damages; and (3) attract competent counsel to counteract the 'community scourge' of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual." *Weinberg v. Sprint Corp.*, 801 A.2d 281, 290 (N.J. 2002) (quoting *Lettenmaier v. Lube Connection, Inc.*, 741 A.2d 591, 593 (N.J. 1999)).  Under N.J. Stat. Ann. § 56:8-18, a private claim brought by a consumer requires proof of "three elements: '1)

A12

unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 960 (N.J. 2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).

"[T]he [NJ]CFA sets forth three general categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790 (N.J. 2005) (citing *Cox*, 647 A.2d at 462). The "practices" deemed "unlawful" under the NJCFA's primary operative provision are stated in broad terms and include "unconscionable" or "decept[ive]" commercial practices or the "omission of any material fact" occurring in connection with a "sale" or "advertisement" of "merchandise" or real estate by any "person." N.J. Stat. Ann. § 56:8-2. The "common thread" underlying all types of unlawful conduct is the "capacity to mislead." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 288 (D.N.J. 2009). Although a showing of intent is not essential if the claimed NJCFA violation is an affirmative act or a regulatory violation—as the regulations impose strict liability for such violations—such a showing is necessary if the claimed violation is an omission. *See Bosland*, 964 A.2d at 748-49. Here, Plaintiffs allege that FCA's destination charges violate the NJCFA by a combination of affirmative acts—unconscionable and deceptive commercial practices—as well as by omitting material facts. (ECF No. 49 ¶¶ 117-119.) The Court will examine each alleged basis in turn.

### 1. *Affirmative Acts*

Plaintiffs first argue that because "FCA's mark-up would surprise consumers," it constitutes a deceptive practice under the NJCFA. (ECF No. 69-5 at 20.) For there to be liability under the

NJCFA,[5] a defendant's affirmative acts must be "misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Harnish v. Widener Univ. Sch. of L.*, 931 F. Supp. 2d 641, 648 (D.N.J. 2013) (quoting *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003)).   Though the determination of what stands "outside the norm" will often present a question for a jury, "courts have dismissed NJCFA complaints for failure to state a claim 'where plaintiffs have failed to allege that the defendant engaged [in] conduct that could be considered misleading within the meaning of the Act.'" *Id.* (quoting *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 515 (D.N.J. 2009)).

In dismissing the FAC, this Court noted that Plaintiffs did "not allege that FCA concealed or hid the destination charge or that the charge [was] for a service that was not or could not be performed." *BCR Carpentry LLC*, 2023 WL 11867230, at *9.  Moreover, the Court observed that the "amount listed and charged by the dealerships is not alleged to be different than what FCA in fact charged the dealerships for the delivery of each vehicle." *Id.*  The same is true now.  (*See, e.g.*, ECF No. 67 ¶ 66 ("FCA presents the destination charge to car buyers and lessees on the window stickers that FCA prints and attaches to each new vehicle for sale or lease at FCA dealerships.").)  Plaintiffs instead focus their attention on a different issue identified by the Court— that reasonable consumers would not understand a destination charge to be free of profit.  Plaintiffs argue that the SAC includes "considerable new detail concerning consumer expectations." (ECF No. 69-5 at 37.)  But even accepting these factual allegations as true, dismissal is warranted.

Plaintiffs do not allege any false statements made by FCA, but instead argue that FCA's conduct in marking up destination fees is misleading.  When it dismissed the FAC, this Court

---

[5]     "In a diversity case [a federal] court must interpret substantive state law in accordance with rulings of the state's highest court." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012).

agreed with other courts that held, as a matter of law, that the term "charge" did not imply an absence of profit. *BCR Carpentry LLC*, 2023 WL 11867230, at *10 (citing *Gunn*, 2023 WL 5418736, at *5 and *Beeney*, 2023 WL 6962116, at *5). As this Court explained:

> Plaintiffs cite no authority supporting the inference that an average consumer would interpret a seller's "charge" as simply equaling the "cost" to the seller. "Charge" is not a specialized term that requires sophistication or expert knowledge. Consumers every day undoubtedly pay a host of charges and fees with the understanding that sellers price goods and services to make a profit.

> [*Id.*]

This Court thus concluded that FCA's conduct did not qualify as "deception" under the NJCFA. Accordingly, the Court's prior dismissal was in line with those of other courts rejecting Plaintiffs' theory of deception. *See Id.* at *10 (citing *Romoff*, 2023 WL 1097258, at *1; *Gunn*, 2023 WL 5418736, at *5; and *Beeney*, 2023 WL 6962116, at *5).

In response to the Court's dismissal of the FAC, Plaintiffs supplemented their allegations with evidence from third-party consumer sources which suggest that reasonable consumers believe destination charges do not include a profit. According to Plaintiffs, "[v]irtually every consumer-facing outlet repeats the same message: destination charges represent 'straight pass-along costs.'" (ECF No. 69-5 at 20.) These third-party statements do not alter this Court's prior conclusion that the term "charge" does not imply an absence of profit. *BCR Carpentry LLC*, 2023 WL 11867230, at *10; *see also Beeney*, 2024 WL 3444488, at *1. Indeed, these are not statements made by FCA, nor do these articles demonstrate that these "charges" or "costs" are definitively profit neutral based on the understanding of a reasonable consumer. *See Beeney*, 2024 WL 3444488, at *1.

Plaintiffs also cite to a 2013 article quoting a Chrysler spokesperson as stating that destination charges are "based on our costs to deliver a new vehicle from the assembly plant to the

dealership." (ECF No. 69-5; ECF No. 67 ¶ 113[6].) Yet Plaintiffs do not explain what factors are considered in determining these costs and whether a profit is also included.

This Court previously held that "Plaintiffs' repeated emphasis on the statements of individual members of Congress more than 60 years ago during the debate over the AIDA is not a persuasive ground upon which to infer deception." *BCR Carpentry LLC*, 2023 WL 11867230, at *1. Nevertheless, Plaintiffs now emphasize that the SAC "add[ed] detail about how members of Congress agree that delivery charge mark-ups mislead," while referencing lawmakers' statements about the AIDA from the 1950s. (ECF No. 69-5 at 21-22.) For the reasons already expressed, the Court finds these statements unpersuasive in proving that FCA engaged in deception. *See BCR Carpentry LLC*, 2023 WL 11867230, at *11.

Ultimately, Plaintiffs' claims related to FCA's alleged deception fail once again because Plaintiffs have still not tied their deception claim to any conduct or statement by FCA. *See id.* at *10 ("There is also no allegation that FCA took affirmative steps, other than listing the 'Destination Charge' on the Monroney Sticker, to mislead Plaintiffs into believing that the charge was equal to FCA's delivery costs—and not a penny more."). Plaintiffs' references to third-party sources regarding destination fees is insufficient to survive a motion to dismiss. *See Beeney*, 2024 WL 3444488, at *1 (after previously dismissing plaintiffs' complaint, holding that any amendment to add third-party sources would be futile).

Plaintiffs next argue that FCA's mark-up on the destination fee is unconscionable because "FCA uses its mark-up to undermine price competition." (ECF No. 69-5 at 23.) Plaintiffs take issue specifically with the amount of the destination charge, not the mere existence of it. (*See id.*)

---

[6]    (citing Kelsey Mays, *What Makes Up a Destination Charge?*, Cars.com (Sept. 23, 2013), https://www.cars.com/articles/what-makes-up-a-destinationcharge- 1420663050695/).

A16

Under New Jersey law, "[t]here is no precise formulation for an 'unconscionable' act that satisfies the statutory standard for an unlawful practice.  The statute establishes 'a broad business ethic' applied 'to balance the interests of the consumer public and those of the sellers.'" *Shah v. Amazon Home Warranty Serv.*, 2023 WL 176096, at *3 (N.J. Super. Ct. App. Div. Jan. 13, 2023) (quoting *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013)).  "An unconscionable practice under the [NJ]CFA 'necessarily entails a lack of good faith, fair dealing, and honesty," *id.*, and it "need not allege an affirmative fraudulent statement, representation, or omission by the defendant," *Katz v. Ambit Ne., LLC*, Civ. No. 20-01289, 2021 WL 2680184, at *7 (D.N.J. June 29, 2021) (citation omitted).  As to an alleged deceptive practice, "[i]n order . . . to amount to a NJCFA violation for an affirmative act of deception . . ., plaintiffs must show that defendant's statements on its product are false" or misleading.  *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703 (D.N.J. 2011).

This Court previously found that Plaintiffs had not stated a plausible claim that FCA's destination fees were unconscionable.  In so finding, the Court noted that "[e]ven accepting that FCA's destination charges are somewhat higher than the charges of its competitors, nothing indicates that Plaintiffs were thwarted from comparison shopping before agreeing to pay FCA's disclosed fee." *BCR Carpentry LLC*, 2023 WL 11867230, at *10.  Other courts considering the issue have come to similar conclusions.  *See, e.g.*, *Romoff*, 574 F. Supp. 3d at 788 ("Reasonable or average consumers would not be surprised to learn that the price of goods often includes profit for the seller."); *Gunn*, 2023 WL 5418736, at *4 ("In essence, plaintiffs ask the Court to determine how much of a profit is fair or reasonable for FCA to make on the different components of its car sales. As amorphous as any balancing test warranted by ... [consumer fraud law] might be, it does not authorize such broad and limitless judicial intervention into private business affairs and

13

A17

transactions."); *Beeney*, 2023 WL 6962116, at *5 ("[N]o reasonable consumer would believe that the destination charges ... included no manufacturer profit.").

After amending their Complaint, Plaintiffs now argue they have "added significant detail to support the conclusion that FCA's mark-up is unconscionable. (ECF No. 69-5 at 24.) Specifically, it "includes facts explaining how FCA's mark-up subverts price competition in the automotive industry, while FCA collects far more than its costs justify." (*Id.*) Plaintiffs further allege that "FCA's charge is the highest in the entire automotive industry—hundreds of dollars higher than the next closest automaker." (*Id.*) According to Plaintiffs, FCA's destination charges are "substantially higher" than the cost of delivery, and FCA is able to charge that higher destination charge because "[c]omparison-shopping in the auto industry centers around MSRPs," which are advertised separately from destination charges. (*Id.* at 25.)

Relatedly, Plaintiffs allege that consumers cannot simply shop elsewhere because "some other automakers are now marking up their charges." (*Id.* at 26.) Thus, "consumers cannot easily avoid being overcharged by simply choosing to shop elsewhere." (*Id.*) Plaintiffs also allege that destination charges are non-negotiable, meaning that "consumers are taught that it is a waste of time to ask for a discount." (*Id.* at 27.) Plaintiffs thus argue that "there is ample basis to conclude that FCA acts unconscionably by shifting hundreds of dollars in profit from the MSRP into automakers' delivery charges." (*Id.*)

After evaluating the additional factual allegations surrounding FCA's alleged price manipulation, and accepting them as true, the Court sees no reason to depart from its earlier ruling that Plaintiffs have not sufficiently alleged that FCA's mark-up on the destination charges was unconscionable under the NJCFA. In dismissing Plaintiffs' claims related to unconscionability, this Court relied on the Third Circuit's decision in *Ciser v. Nestle Waters North America Inc.*, 596

F. App'x 157, 157-58 (3d Cir. 2015). *See BCR Carpentry LLC*, 2023 WL 11867230, at *9. There, the Third Circuit found that a fully disclosed fee in a consumer contract was not unconscionable under the NJCFA. *Ciser*, 596 F. App'x at 158. This Court thus concluded that "like in *Ciser*, it cannot be inferred as inherently unfair or unconscionable for FCA to include a measure of profit in the destination charges that it passes to consumers who, before purchasing or leasing their new vehicles, know the full amount of the charges." *BCR Carpentry LLC*, 2023 WL 11867230, at *10. Plaintiffs have not alleged any new facts that would change this Court's prior ruling and analysis of *Ciser*. (*See generally* ECF No. 69-5.)

Instead, Plaintiffs cite *Pro v. Hertz Equip. Rental Corp.*, Civ. No. 06-03830, 2012 WL 12906183, at *1 (D.N.J. June 25, 2012), to support their argument that "there is ample basis to conclude that FCA acts unconscionably by shifting hundreds of dollars in profit from the MSRP into automakers' delivery charges." (ECF No. 69-5 at 27.) In *Hertz*, the court explained that:

> an unconscionable commercial practice will be found where "the price [charged for the product or service] is grossly excessive in relation to the seller's costs," and where "the goods sold have little or no value to the consumer for the purpose for which [the consumer] was persuaded to buy them and which the seller pretended they would serve.
>
> [*Hertz*, 2012 WL 12906183, at *1 (alterations in original).]

*Hertz* involved a class action claim in which the plaintiffs alleged that insurance sold by a car rental company was actually illusory. *Id.* In denying the defendant's partial motion for summary judgment, the court referenced the fact that discovery had revealed that out of 1.4 million car rentals, there were only 274 instances in which the customer had been relieved of liability. *Id.* Thus, while the defendant had collected $151 million in insurance charges, it had only paid approximately $1.3 million in claims. *Id.* at *2. Here, Plaintiffs do not contend that the destination charge was illusory or that the charge was for a service that was not provided. Unlike in *Hertz*,

the charges at issue include the cost to deliver the vehicle and are not of "little or no value to the consumer." *See id.* at *1 (quoting *Kugler v. Romain*, 279 A.2d 640, 644 (N.J. 1971)). Importantly, none of the Plaintiffs allege that the destination fee was illusory—that FCA does not incur costs to ship its vehicles or that Plaintiffs did not receive their vehicle. Plaintiffs simply allege that FCA's destination fee includes an additional profit. (*See generally* ECF No. 67.) For many of the same reasons already addressed by this Court, Plaintiffs' claims alleging unconscionable practices by FCA will be dismissed.

### 2.  *Omissions*

To establish an unlawful act of omission under the NJCFA, a "plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment." *Harnish*, 931 F. Supp. 2d at 652 (quoting *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003)). "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what [was] concealed to induce the purchase." *Arcand*, 673 F. Supp. 2d at 297.

The Court previously found that Plaintiffs did not state a NJCFA claim based on the omission theory for two reasons. First, the Court found that Plaintiffs had not plausibly alleged that FCA was under a duty to disclose that the destination charge included profits. *BCR Carpentry LLC*, 2023 WL 11867230, at *11. Second, the Court found that Plaintiffs' allegations did not establish that any alleged omissions were material. *Id.* Plaintiffs' omission-based claim in the SAC ultimately fails for the same reasons.

Plaintiffs argue they have cured the deficiencies in their Complaint related to the first point because their "new allegations solidify that consumers understand 'destination charges' to be profit-free." (ECF No. 69-5 at 32.) That, however, does not address the Court's reasons for finding that FCA was not under a duty to disclose. This Court previously explained that "the AIDA

16

requires manufacturers of new cars to disclose 'the amount charged, if any, to [a] dealer for the transportation of such automobile to the location at which it is delivered to such dealer.'" *BCR Carpentry LLC*, 2023 WL 11867230, at *11. Accordingly, this Court found that FCA undisputedly complied with AIDA, and it further noted that Congress could have required more fulsome disclosure, but it chose not to do so. *Id.* Plaintiffs' SAC does not change the Court's prior conclusion that "Plaintiffs d[id] not point to any allegations that support the inference that FCA ever referred to its 'destination charge' as being equal to the 'underlying delivery costs.'" *Id.*

The Court also finds that Plaintiffs have still not alleged that the amount of profit FCA made from the destination charge was a "material fact" in purchasing their vehicles. The third-party statements cited by Plaintiffs do not alter the Court's conclusion that the amount of profit in a fully disclosed destination fee is immaterial. *Id.*; *see also Beeney*, 2023 WL 6962116, at *6 ("Plaintiffs have not alleged facts showing that the listed destination charge was material to their purchasing decisions, let alone that they would not have purchased or leased their vehicles had FCA disclosed that there was profit baked into the destination charge."). For these reasons, Plaintiffs have not stated a plausible claim against FCA for liability under the NJCFA based on any alleged omissions.[7]

### B.    Counts One and Three (Money Had and Received & Unjust Enrichment)

The elements of a money had and received claim "are essentially the same as those for unjust enrichment." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 381 (D.N.J. 2021). "Both are quasi-contract claims, and the federal courts have construed them in parallel." *Id.* (collecting cases); *see also New York Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co.*,

---

[7]    Having concluded that Plaintiffs do not state a claim for violations of the NJCFA, the Court does not reach the question of whether Plaintiffs' NJCFA claims are preempted by the AIDA. (ECF No. 69-1 at 32-29.)

Civ. No. 10-148, 2012 WL 209349, at *2 (D.N.J. Jan. 24, 2012) ("One cause of action for unjust enrichment at common law was the action in assumpsit for 'money had and received,' which is 'equitable in spirit, although legal in form, and is maintainable when the defendant has received money which in equity and good conscience belongs to the plaintiff.'" (quoting *Hartford Acc. & Indem. Co. v. Benevento*, 44 A.2d 97, 100 (N.J. E. & A. 1945))). These quasi-contractual claims "appl[y] when a party 'received a benefit and retention of that benefit without payment would be unjust.'" *Dougherty*, 534 F. Supp 3d at 379 (citing *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016)). These claims typically arise "when a plaintiff cannot show that an express or implied contract existed, but still seeks to recover on principles of equity." *Id.*

For many of the same reasons the Court dismisses Plaintiffs' NJCFA claims, the Court will dismiss Plaintiffs' money had and received and unjust enrichment claims. There is no alleged inequity. Rather, the destination charge is disclosed to the buyer as set forth on the Monroney Sticker. (*See* ECF No. 67 ¶¶ 135, 142.) Plaintiffs cite several cases in which courts in this district have permitted unjust enrichment claims to proceed against manufacturers where the plaintiffs purchased vehicles from car dealerships. (ECF No. 69-5 at 41.) But, unlike here, those cases involved specific allegations of wrongdoing or failure to perform. *See Bullard v. Jaguar Land Rover Auto. PLC*, Civ. No. 20-14464, 2023 WL 4845873, at *12 (D.N.J. July 28, 2023) (finding that plaintiff stated unjust enrichment claim against car manufacturer that knew of manufacturing defect but failed to disclose it); *Rains v. Jaguar Land Rover N. Am., LLC*, Civ. No. 4370, 2023 WL 6234411, at *11 (D.N.J. Sept. 26, 2023) (same); *Gujral v. BMW of N. Am., LLC*, Civ. No. 19-20581, 2022 WL 3646627, at *6 (D.N.J. Aug. 23, 2022) (finding that the plaintiffs stated a claim for unjust enrichment where they "sufficiently allege[d] that [the d]efendant benefited financially

from its alleged breach of warranty, misrepresentations, and fraud"). But here, Plaintiffs' allegations fall short of any wrongdoing or failure to perform by FCA.

Therefore, Plaintiffs have not stated a claim for money had and received or unjust enrichment. *See Tripicchio v. UPS Store, Inc.*, Civ. No. 21-14512, 2023 WL 3182915, at *9 (D.N.J. Apr. 30, 2023) ("Plaintiff's payment was part of a transaction in which Defendants provided a service at an agreed upon price—that is, each party received their expected benefit. Plaintiff fails to cite any authority supporting the notion that a transaction for services at a fixed price gives rise to a cause of action for unjust enrichment where those services were sufficiently rendered."). Counts One and Three for money had and received and unjust enrichment are dismissed with prejudice.

## V.   **CONCLUSION**

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 69) is **GRANTED**. The SAC is **DISMISSED** with prejudice.[8] An appropriate Order follows.

Dated: October 23, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[8] As in *Beeney*, 2024 WL 3444488, at *2, and for the reasons expressed herein, the Court finds that any further amendment would be futile and thus dismisses the SAC with prejudice. *See Grooms v. Ally Fin.*, No. 23-2285, 2023 WL 8251315, at *2 (3d Cir. Nov. 29, 2023) ("[W]e agree with the District Court's determination that amendment would be futile and therefore the District Court properly dismissed the complaint with prejudice.").

19

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BCR CARPENTRY LLC, KIMBERLY ENRIGHT, WILLIAM DEMOLA, MICHAEL BENT, and AMY ARROYO, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>FCA US, LLC, et al.,<br><br>         Defendants. | Civil Action No. 21-19364 (GC) (JTQ)<br><br>**ORDER** |

**THIS MATTER** comes before the Court upon Defendant FCA US, LLC's Motion to Dismiss the Consolidated Second Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).  (ECF No. 69.)  Following briefing by the parties, the Court carefully considered the submissions and decided the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth in the Court's accompanying Opinion, and other good cause shown,

**IT IS** on this 23rd day of October, 2024 **ORDERED** as follows:

1. Defendant's Motion to Dismiss (ECF No. 69-1) is **GRANTED**.

2. Plaintiffs' claims are **DISMISSED** with prejudice.

3. The Clerk's Office is directed to **TERMINATE** the motion pending at ECF No. 69 and to **CLOSE** this case.

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

A24