**Case No. 24-3202**

---

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

BCR CARPENTRY LLC, et al.,

*Plaintiffs – Appellants,*

v.

FCA US LLC,

*Defendant – Appellee.*

---

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:21-cv-19364
Hon. Georgette Castner, Judge Presiding

---

### BRIEF OF APPELLEE FCA US LLC

---

Stephen A. D'Aunoy
steve.daunoy@kleinthomaslaw.com
KLEIN THOMAS LEE & FRESARD
100 N. Broadway, Suite 1600
St. Louis, MO 63102
(314) 888-2970

*Attorneys for Defendant-Appellee FCA US LLC*

# <u>RULE 26.1 CORPORATE DISCLOSURE STATEMENT</u>

FCA US LLC is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan.  It is not publicly owned.  It has one member, FCA North America Holdings LLC, which is not publicly owned.  FCA Foreign Sales Holdco Ltd. (UK) is the sole member of FCA North America Holdings LLC.  FCA Foreign Sales Holdco Ltd. (UK) is wholly owned by SFS UK1 Limited (UK), which is wholly owned by Stellantis N.V.  Stellantis N.V. (formerly Fiat Chrysler Automobiles N.V.) is a publicly traded entity organized and existing under the laws of, and with its principal place of business in, the Netherlands.

# TABLE OF CONTENTS

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ......................... i

TABLE OF CONTENTS ........................................................... ii

TABLE OF AUTHORITIES ..................................................... iv

STATEMENT REGARDING JURISDICTION ........................................ 1

STATEMENT OF THE ISSUES FOR REVIEW ..................................... 2

STATEMENT OF RELATED CASES AND PROCEEDINGS................. 2

STATEMENT OF THE CASE ................................................. 4

    I.   The Admitted Facts And The Nature Of The Claims. ................. 4

        A.   The Relevant Facts Established By Plaintiffs' Allegations. ..................................................................... 4

        B.   The Factual And Legal Theories Of Liability And Damages ............................................................. 7

    II.  The Automobile Information Disclosure Act............................. 11

    III. The Relevant Proceedings In The District Court........................ 12

SUMMARY OF THE ARGUMENT ......................................... 12

ARGUMENT ................................................................... 13

  I.   The District Court's Dismissal Should Be Affirmed Because All Of Plaintiffs' Claims Are Preempted. ............................. 13

  II.  The District Court Correctly Concluded The Second Amended Class Action Complaint Stated No Viable Claim. ......................... 17

A.  The District Court's Dismissal Should Be Affirmed Because The Facts Pleaded Do Not Show FCA US Engaged In Any Wrongful Conduct (All Counts)..............17

B.  The District Court's Dismissal Should Be Affirmed Because Plaintiffs Pleaded No Facts Supporting The Existence Of An Injury (All Counts). ................................28

C.  The District Court's Dismissal Of The Equitable Claims Should Be Affirmed For The Additional Reasons That The Facts Pleaded Failed To Establish FCA US Benefitted Or That Any Money Belongs To Plaintiffs (Counts I, III)......29

D.  The Complaint Is Not Saved By Plaintiffs' Allegations Of Legislative History, Nor Their Citations To Inapplicable Cases. ................................................................32

CONCLUSION ........................................................37

CERTIFICATE OF COMPLIANCE........................................38

CERTIFICATE OF SERVICE ............................................40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anela v. Cty. Of Wildwood,*
  790 F.2d 1063 (3d Cir. 1986)..........................................................21

*Appert v. Morgan Stanley Dean Witter, Inc.,*
  673 F.3d 609 (7th Cir. 2012) ..........................................................22

*Atkins v. Parker,*
  472 U.S. 115 (1984) .......................................................................21

*Baraka v. McGreevey,*
  481 F.3d 187 (3d Cir. 2007)............................................................17

*Barry v. Arrow Pontiac, Inc.,*
  494 A.2d 804 (D.N.J. 1985) ......................................................33, 34

*Beeney v. FCA US LLC,*
  Case No. 1:22-cv-00518 (D.Del.).....................................2, 3, 22, 24

*Beeney v. FCA US LLC,*
  Case No. 24-2519 (3d Cir.) ..............................................................3

*Ciser v. Nestle Waters N. Am. Inc.,*
  596 Fed.Appx. 157 (3d Cir. 2015) ..................................................22

*Cohen v. Subaru of Am., Inc.,*
  2022 WL 721307 (D.N.J. 2022) ......................................................30

*Farina v. Nokia, Inc.,*
  625 F.3d 97 (3d Cir. 2010)........................................................14, 15

*Ferrell v. Express Check Advance of SC LLC,*
  591 F.3d 698 (4th Cir. 2010) ............................................................1

*Fleisher v. Standard Ins. Co.,*
  679 F.3d 116 (3d Cir. 2012).............................................................17

*Gunn v. FCA US LLC,*
    Case No. 3:22-cv-02229 (N.D.Cal.)....................................2, 3, 22, 23

*Hughes v. Long,*
    242 F.3d 121 (3d Cir. 2001)..............................................13

*In re National Credit Mgmt. Group, LLC,*
    21 F.Supp.2d 424 (D.N.J. 1998).......................................36

*Innovative Cosmetic Concepts, LLC v. Brown Packaging, Inc.,*
    2020 WL 7048577 (D.N.J. 2020).....................................31

*Kugler v. Romain,*
    279 A.2d 640 (N.J. 1971).............................................35, 36

*Mabey Bridge & Shore, Inc. v. Schoch,*
    666 F.3d 862 (3d Cir. 2012)..............................................13

*Marentette v. Abbott Labs., Inc.,*
    886 F.3d 112 (2d Cir. 2018)..............................................16

*Milner v. Dep't of Navy,*
    562 U.S. 562 (2011)..........................................................33

*N.L.R.B. v. SW Gen., Inc.,*
    580 U.S. 288 (2017)..........................................................33

*Ponzio v. Mercedes-Benz USA, LLC,*
    447 F.Supp.3d 194 (D.N.J. 2020)....................................31

*Powell v. Subaru of Am., Inc.,*
    502 F.Supp.3d 856 (D.N.J. 2020)....................................30

*Romoff v. General Motors LLC,* 574 F.Supp.3d 782 (S.D. Cal. 2021),
    *aff'd* 2023 WL 1097258 (9th Cir. 2023)..........................3, 22, 23, 24

*Snyder v. Farnam Co., Inc.,*
    792 F.Supp.2d 712 (D.N.J. 2011)....................................31

*Stratis v. BMW of N. Am., LLC,*
2023 WL 3092188 (D.N.J. 2023) ..................................................... 30

*Trocki v. Penn Nat'l Mut. Cas. Ins. Co.,*
2023 WL 5950552 (3d Cir. 2023) .................................................... 26

*United States v. Cummings,*
184 F.Supp. 18 (W.D.Pa. 1960) ..................................................... 11

## **Statutes**

Automobile Information Disclosure Act of 1958,
15 USC §§1231-1233 ("AIDA") ............................................... *passim*

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1332(d)(2) ....................................................................... 1

28 U.S.C. § 1332(d)(10) ..................................................................... 1

New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ................... 10

## **Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................... 17

# STATEMENT REGARDING JURISDICTION

The district court had original jurisdiction under 28 U.S.C. § 1332(d)(2) because the number of putative class members was greater than 100, Plaintiffs/Appellants are citizens of a state (New Jersey) which differs from Defendant/Appellee FCA US LLC (Delaware, Michigan),[1] and the amount in controversy exceeded $5,000,000, exclusive of interest and costs.

On October 24, 2024, the district court dismissed Plaintiffs' Second Amended Class Action Complaint with prejudice. This is a final appealable order, and thus this Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] FCA US is a limited liability company. Under 28 U.S.C. § 1332(d)(10), the citizenship of its members is irrelevant to the jurisdictional analysis because in a class action its citizenship is determined solely by the state under whose laws it is organized and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(d)(10) ("an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized"); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010) ("a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business").

## STATEMENT OF THE ISSUES FOR REVIEW

I.     Whether Plaintiffs' claims are barred by principles of conflict preemption when federal law mandates the precise pricing information which must be included on a vehicle's "window sticker" and Plaintiffs' claims would mandate the inclusion of different information?

II.     Whether Plaintiffs stated any legally viable and factually supported claim for relief when they predicated their claims on the theory that a vehicle manufacturer acts deceptively, unfairly, or unconscionably, and causes a consumer injury, by charging its authorized dealers a specified "destination charge" which contains a profit, the full amount of which it identifies on the window stickers of its vehicles as is required by federal law, stickers which Plaintiffs admit they saw and considered before purchasing their vehicles?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court.  With respect to cases filed against FCA US LLC, identical claims to those pleaded here were made in two other cases:  *Gunn v. FCA US LLC*, Case No. 3:22-cv-02229 (N.D.Cal.); and *Beeney v. FCA US LLC*, Case No. 1:22-cv-00518 (D.Del.).

Both of these cases were dismissed on the pleadings.[2]  The plaintiffs were granted leave to file an amended complaint in *Gunn*, and a motion to dismiss the amended complaint remains pending there.  The plaintiffs' motion seeking leave to file an amended complaint was denied in *Beeney*,[3] and the appeal of that denial is currently pending before this Circuit.  *See Beeney v. FCA US LLC*, Case No. 24-2519 (3d Cir.).

In addition, claims virtually identical to those made here were pleaded against another automotive manufacturer in *Romoff v. General Motors LLC*, Case No. 21-cv-00938 (S.D.Cal).  The district court in *Romoff* dismissed all claims on the pleadings, and its dismissal was affirmed on appeal by the Ninth Circuit.  *See Romoff v. General Motors LLC*, 574 F.Supp.3d 782 (S.D. Cal. 2021), *aff'd* 2023 WL 1097258 (9th Cir. 2023).

---

[2]*See Gunn v. FCA US LLC*, 2023 WL 5418736 (N.D.Cal. 2023); *Beeney v. FCA US LLC*, 2023 WL 6962116 (D.Del. 2023).

[3]*See Beeney v. FCA US LLC*, 2024 WL 3444488 (D.Del. 2023).

## STATEMENT OF THE CASE

## I.    The Admitted Facts And The Nature Of The Claims.

### A.    The Relevant Facts Established By Plaintiffs' Allegations.

The facts underlying Plaintiffs' vehicle purchases upon which they rest their claims are set forth in the Second Amended Class Action Complaint.[4]    Plaintiffs each purchased one or more vehicles manufactured by FCA US from a third-party independent automotive dealership.  Appx110-21(¶¶10-44).  No Plaintiff claims to have done any reading of advertisements, or internet research, on pricing information of vehicles prior to his/her purchase.  *See, generally*, Appx103-290.

Indeed, each Plaintiff readily acknowledge that what he/she "viewed" and relied on for "pricing information" prior to purchase was the "window sticker" (a/k/a "Monroney Sticker") attached to his/her vehicle.[5] Appx110-21(¶¶12, 18, 24, 30, 36, 41).  The window stickers informed

---

[4]*See* Appx103-290 (hereinafter "Complaint").

[5]The terms "Monroney sticker" or "window sticker" are commonly used interchangeably to refer to the federally-mandated label that a motor vehicle manufacturer is required to affix to the windshield or side window of every new vehicle it delivers to a dealership.  *See* 15 U.S.C. § 1232.  This federally-mandated label is referred to as a "window sticker" herein.

Plaintiffs of the "total price" for their vehicles, and made clear the displayed "total price" was derived at by adding the cost of three specifically identified items, *i.e.,* the stated "base price" amount,[6] the noted costs of installed "optional equipment," and the specified amount of the "destination charge."[7]  *Id.*

Plaintiffs did ***not*** allege they asked about any of the separate cost components that made up the "total price" displayed on the window stickers attached to their vehicles' windows.   (Appx148-49(¶91)).  They did ***not*** allege they attempted to separately negotiate the stated destination charge, as opposed to simply negotiating the total price they would pay for their vehicles.  *Id.*  This is significant because the facts pleaded suggest Plaintiffs were unconcerned about the amount of the destination charge since two of them (BCR Carpentry and Arroyo) paid

---

[6]As Plaintiffs acknowledge in their brief, the "base price" is the manufacturer's suggested retail price for the base model (commonly referred to as "MSRP").  *See* Appellants Opening Brief, Doc. 18 ("Pl. Brief"), pp. 7-8.

[7]A footnote on the sticker indicated that certain items like state and local taxes and dealer added options were not included in the total price displayed.  Appx110-21(¶¶12, 18, 24, 30, 36, 41).

significantly more for their vehicles than the sticker price, and only one (Bent) actually paid less.  *See*, *generally*, Appx110-21(¶¶10-44).

Significantly, Plaintiffs did ***not*** allege they contracted with, or paid any money to, FCA US as part of their sales transactions.  *See*, *generally*, Appx103-290.  In fact, they acknowledged the exact opposite when they admitted that

> ➢ it is the selling dealership, not the consumer, who bears the "contractual obligation" to pay FCA US the stated amount of the destination charge reflected on the window sticker (Appx132-33(¶66 fn25)); and

> ➢ whether by using a credit arrangement or otherwise, it is the selling dealership who actually pays FCA US the amount of the disclosed "destination charge" (Appx148-49(¶91)).

Remarkably, Plaintiffs did ***not*** allege that the amount of the destination charge shown on any window sticker misrepresented the actual amount the selling dealership was "contractually obligated" to pay, and did pay, FCA US as a destination charge.  *Id.*  And, in their Complaint Plaintiffs expressly stated that this "suit does ***not*** take issue

6

with FCA's charge to its dealers." Appx132-33(¶66 fn25).[8] According to

Plaintiffs, the only relevance the imposition of a destination charge on

the dealer has to their claims is that, due to the dealerships having a

"contractual obligation" to pay FCA US the stated destination charge,

"the dealers are not in a position to waive or reduce the destination

charge for consumers." *Id.*

## B.     *The Factual And Legal Theories Of Liability And Damages.*

Plaintiffs' claims arose out of their core allegations that FCA US

imposes a destination charge that is "far beyond [] true vehicle delivery

costs," and "by labeling [this] inflated surcharge a 'destination charge'

without disclosing the existence of the markup, [it] deceives the car-

buying and leasing public." Appx107-08(¶¶4-5).[9] Plaintiffs averred that

by assessing a destination charge which has a "markup" FCA US

employed a "pricing trick" that "allow[ed] [it] to keep its MSRPs

---

[8]In their brief in this Court Plaintiffs again stress that they are in
no way contesting the destination charge amount that FCA US imposes
on dealerships. *See* Pl. Brief, p. 8 ("FCA's charge to the dealer is ***not*** at
issue in this case" (emphasis added)); *id.* at p. 45 ("[Plaintiffs] do not take
issue with any charge involving dealerships").

[9]*See also* Appx135-36(¶70) (alleging FCA US uses an "unfair and
deceptive pricing practice" by "substantially inflat[ing] the delivery
surcharge on its new vehicles—well beyond the true delivery costs").

artificially low," and this purportedly "manipulat[ed] market demand for its vehicles and thwart[ed] longstanding federal policies that seek to promote fair and open pricing competition in the automotive industry." Appx136(¶71).   Notably, however, Plaintiffs proffer no facts, or even conclusory averments, that FCA US has some inordinate market share or experiences an inordinate demand for its vehicles.  *See*, *generally*, Appx103-290.  And, the Complaint is devoid of any ***facts*** of what the destination charge allegedly would have been without a "markup."  *Id.* Instead, Plaintiffs rely entirely on self-serving, conclusory, and generalized averments that the destination was "hundreds of dollars more" because of a markup.  *See, e.g.,* Appx154(¶99).

In the Complaint Plaintiffs tried to support their theory of deception with averments of:  publications analyzing the psychology of consumer buying behavior; an assumption that consumers focus on advertised "starting"[10] MSRPs for vehicles in making a buying decision and their decision to buy is not impacted by the effect of additional

---

[10]Plaintiffs' theory is dependent on the notion that FCA US advertised the actual price of vehicles, but every advertisement they rely on makes clear the information provided therein is simply the "MSRP ***Starting***" price for a model.  Appx127-29(¶¶59-61) (emphasis added).

charges increasing the total price; and the disclosure of the destination charge coming "later" than the disclosure of the total price for a vehicle. Appx122-49 (¶¶49-91); *see also* Appx131-32(¶64) (alleging MSRP is what consumers consider to be the "prime information" available "to gauge what they will pay for a new vehicle," and thus when they "comparison shop by price, they compare MSRPs and not charges below the line like destination charges"); Appx140(¶80) ("Separating a product's price into component parts causes consumers to underestimate the total cost of the transaction").

According to Plaintiffs, publications lead consumers generally to "understand" that destination charges are "nonnegotiable" and that "they have no choice but to pay the surcharges." Appx133(¶67). They claimed FCA US's increase of its destination charges "outpace[ed] all other manufacturers," and FCA US has "substantially over[took] its competition in ratcheting up destination charges."[11] Appx154(¶¶99-100).

---

[11]Today a consumer can build almost any vehicle online at the manufacturer's website, and the end result will display the "destination charge" for the vehicle along with all other pricing information. Plaintiffs' allegations that FCA US's destination charges have "outpaced" those of its competitors is readily disprovable as today the destination charge displayed online for a basic Ram 1500 4x4 build and its Ford (F-

These are the overarching allegations that lie at the heart of each of the three theories of liability pleaded by Plaintiffs in the Complaint: money had and received (Count I); violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* (Count II); and unjust enrichment (Count III). *See* Appx196-203(¶¶180-206).

Plaintiffs' pleaded theory of injury is put forth in one sentence: "FCA's practice of advertising MSRPs while hiding extra profit in the lesser-discussed destination charge, leads consumers to pay more than they otherwise would." Appx152(¶96). There are no allegations as to how much "less" Plaintiffs would have demanded to pay if they had realized the destination charge was not the actual cost of transportation. *See, generally*, Appx103-290. Nor is there any allegation that Plaintiffs would have walked away from the transaction if the negotiated price of their vehicles was not reduced when they realized the destination charge was in excess of the actual transportation cost. *Id.*

---

150 4x4) and Chevrolet counterparts (Silverado 1500 4x4) is exactly the same ($1,995). And, notably, Plaintiffs' allegations that FCA US's alleged destination charge practices are somehow even more detrimental to online shoppers cannot be reconciled with today's realities where destination charge information is part and parcel of pricing on manufacturer's websites when a consumer goes there and builds his desired vehicle. *See, e.g.,* Appx139-40(¶79); Appx146-47(¶88).

## II.    <u>The Automobile Information Disclosure Act.</u>

The Automobile Information Disclosure Act of 1958 is codified at 15 USC §§1231-1233 ("AIDA").  Its legislative history indicates the "primary purpose" for which it was enacted was to "disclose the manufacturer's suggested retail price of [a] new automobile so that the buyer will know what it is." *United States v. Cummings*, 184 F.Supp. 18, 19 (W.D.Pa. 1960) (parenthetical information omitted) (*citing* House Report, No. 1958, June 24, 1958).  Under the Act, a manufacturer is required to affix a label to the side window or windshield of every vehicle it distributes and display certain specified pricing information:

- the vehicle's "retail price as suggested by the manufacturer";

- the manufacturer's suggested price for any optional equipment it included on the vehicle;

- "***the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer***"; and

- the total of the above three amounts.

15 U.S.C. § 1232(f) (emphasis added).

## III.   <u>The Relevant Proceedings In The District Court.</u>

This case was initiated on October 27, 2021.  Appx27(#1).  After consolidation with a separate case alleging identical wrongdoing (Appx29(#25)), Plaintiffs filed an amended complaint (Appx32(#49)).  On December 22, 2023, the district court dismissed the amended complaint without prejudice for failure to plead any legally viable claim, and indicated Plaintiffs could seek leave to file an amended complaint within 30 days.  Appx34(#63).  After the district court granted a timely-filed motion seeking leave to amend (Appx34(#66)), Plaintiffs BCR Carpentry LLC, Kimberly Enright, William Demola, Michael Bent, and Amy Arroyo filed their Second Amended Class Action Complaint (Appx34(#67)).  FCA US then again moved for dismissal.  Appx35(#69).  On October 24, 2024, the district court dismissed this case with prejudice finding Plaintiffs stated no legally viable claim.  Appx35(##73, 74).  On November 11, 2024, Plaintiffs timely filed a notice of appeal challenging the dismissal.  Appx1-2.

## <u>SUMMARY OF THE ARGUMENT</u>

The district court correctly dismissed the Complaint.  The claims pleaded are legally barred by principles of conflict preemption.  Even if

they were not barred, including a profit in a fully disclosed "charge" which a consumer admits to having considered before agreeing to purchase a product could never be deemed fraudulent, unfair, misleading, or unconscionable. Because Plaintiffs' claims were all premised on such a notion they stated no legally viable claim.

## ARGUMENT

### I.   The District Court's Dismissal Should Be Affirmed Because All Of Plaintiffs' Claims Are Preempted.

The district court chose not to address the preemption issue raised by FCA US in its motion to dismiss. *See* Appx21 fn.7. Regardless, this Court can affirm the dismissal on preemption grounds. *See, e.g., Hughes v. Long*, 242 F.3d 121, 122 fn.1 (3d Cir. 2001) ("We may affirm a District Court's judgment on grounds other than those considered by the District Court itself"). This Court reviews a preemption question de novo. *Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 867 (3d Cir. 2012).

Plaintiffs' claims are preempted because they effectively seek to impose civil liability on FCA US based on its compliance with a federally mandated labeling requirement. Plaintiffs make it beyond clear that they do not challenge the amount of the destination charge imposed by FCA US on its authorized dealerships. *See, e.g.,* Appx132-33(¶66 fn.25).

What Plaintiffs complain about is that the displayed destination charge on the window stickers of their vehicles should have revealed the charge included a profit on the part of FCA US (not the selling dealer). *See* Appx107-08(¶¶4-5). Mandating the provision of such information would conflict with AIDA. Thus Plaintiffs' claims are preempted.

Conflict preemption applies when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Farina v. Nokia, Inc.*, 625 F.3d 97, 122 (3d Cir. 2010). As Plaintiffs admit, when enacting the AIDA Congress clearly stated its objective was to provide uniform pricing labels on cars so consumers could negotiate "with the minimum necessary information." Appx183(¶156). Congress noted its intent that the Act's destination charge requirement was not to be used to "approve or disapprove the methods by which transportation charges are made," but simply to impose a requirement that "whatever amount is charged to the dealer, that amount be disclosed." *Id.* In fact, one automobile manufacturer testified before Congress that the destination charge it imposed was ***not*** actual freight but simply what it charged a dealer to transport the

vehicle. *See* Appx256.[12]  The Committee responded to this revelation by stating it was "not interested in the actual freight" being displayed but only "in the delivery charge being clearly shown." Appx257.

The pleaded claims in Plaintiffs' Complaint were aimed at doing exactly what Congress expressly considered and rejected, *i.e.,* requiring window stickers to include actual transportation cost or profit mark up. Because Congress expressly weighed and rejected this very notion, preemption applies. *See, e.g., Farina*, 625 F.3d at 125 (finding conflict preemption applied where federal government weighed competing interests and "reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers").

That conflict preemption principles apply is also clear when looking at the purpose of the federal scheme.  By virtue of the claims pleaded in the Complaint Plaintiffs sought to hold FCA US liable under a theory

---

[12]"On deliveries from outlying assembly plants General Motors Corp does not charge its dealers the freight from the plant to the dealer's place of business.  General Motors charges the dealer a 'destination charge' which represents a charge to the dealer made by General Motors for transporting the car to the dealer's place of business." Appx256.

that it failed to show profit markups as part of the destination charge it displays on a federally-mandated automobile window sticker. But, forcing a disclosure of profit in addition to an actual charge would thwart Congress's purpose in enacting the AIDA.

Congress expressly stated its goal was to give consumers "the minimum necessary information" to engage in negotiation. Appx183(¶156). It concluded only four specific pieces of information were necessary to achieve this goal, and limiting pricing information to these four would act to ensure window stickers were "clear" enough so consumers could negotiate. *See* 15 U.S.C. § 1232(f). The amount a manufacturer charged to a dealer as a destination charge—not profit margins or actual transportation costs—were found to be what was needed. *Id.* Using state law to mandate something more or different would defeat Congress' intent to include only limited information. Thus, conflict preemption applies. *See Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 118 (2d Cir. 2018) (holding state consumer fraud laws preempted with respect to alleged false product labeling because they "strike at the very heart of" the federal scheme).

16

Because Plaintiffs' claims are all preempted the district court's order of dismissal should be affirmed.

## II. The District Court Correctly Concluded The Second Amended Class Action Complaint Stated No Viable Claim.

This Court applies a plenary standard when reviewing a district court's dismissal of a complaint under Rule 12(b)(6). *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). While the Court accepts all factual allegations in a complaint as true, it is "not compelled to accept unsupported conclusions[,] unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka*, 481 F.3d at 195. Dismissal will be affirmed when a complaint does not "contain sufficient factual allegations, taken as true, to state a claim to relief that is plausible on its face." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

### A. The District Court's Dismissal Should Be Affirmed Because The Facts Pleaded Do Not Show FCA US Engaged In Any Wrongful Conduct (All Counts).

It is beyond debate that Plaintiffs' claims require some showing of wrongdoing. In the Complaint Plaintiffs' theory of wrongdoing sounds squarely in fraud. *See, generally*, Appx103-290. It is thus noteworthy that Plaintiffs did ***not*** allege the destination charges for their vehicles were hidden from them. *Id.* And, they did ***not*** allege that they were told

the total price for their vehicles was one amount, only to later be told that the total price was more because of an added destination charge.  *Id.*

To the contrary, in the Complaint each Plaintiff conceded that the total price for his/her vehicle was displayed on an attached window sticker which provided ***all*** pricing information on a component-by-component basis, with one of those components being the exact amount of the destination charge.    Appx110-21(¶¶12, 18, 24, 30, 36, 41). Plaintiffs also effectively conceded that the amount of the displayed destination charges on the window stickers of their vehicles accurately reflected what the dealerships had to pay FCA US to get their vehicles delivered, and Plaintiffs admitted they are not challenging what the dealerships were charged by FCA US.  Appx132-33(¶66 fn.25).

Despite the undisputed fact that Plaintiffs were presented with all pricing information for their vehicles at one time up front, Plaintiffs tell this Court they were deceived.  In their Complaint they described this deception as "consumers [] not expect[ing] FCA's destination charge to be marked up to generate profit for FCA." Appx159(¶110).  In their brief in this Court, Plaintiffs argue similarly:  "By labeling its [destination] charge to convey one thing (a pass-through charge solely recouping

delivery costs), while actually using that charge for another (substantial profit), FCA engaged in a misleading sleight of hand." Pl. Brief, p. 30 (parenthetical information in original).

Remarkably, nowhere in the Complaint did any Plaintiff allege he/she actually believed there was no profit built into the destination charge component incorporated into the total price of his/her vehicle. *See*, *generally*, Appx103-290. Instead, Plaintiffs proffered only general allegations of what some third-party publications said about the destination charge, suggesting these publications lead reasonable consumers to believe there is no profit included in a stated destination charge. Appx133-35 (¶¶67-69). The problem for Plaintiffs is that they did ***not*** allege ***they*** were led to hold such beliefs by these outside publications. *See*, *generally*, Appx103-290. Indeed, they never even alleged that they ever saw these publications. *Id.* What Plaintiffs are left with then is the simple notion that the term "destination charge"— in and of itself—connotes a lack of any built-in profit. There are two inherent flaws in this notion.

*First*, Plaintiffs purchased their vehicles from independent dealerships, not FCA US. Appx110-21(¶¶11, 17, 23, 29, 35, 40). With

Plaintiffs conceding their claims do ***not*** challenge the amount of the destination charge paid by the dealerships to FCA US (Appx132-33(¶66 fn25), and with them failing to allege that the destination charge was inaccurate with respect to what the dealerships paid (Appx103-290), the allegation that there was some built-in "profit" in the destination charge is defeated by their own allegations. Indeed, Plaintiffs' allegations establish nothing other than that, as required by federal law,[13] FCA US displayed on the window stickers of Plaintiffs' vehicles the exact amount of the destination charge it imposed on the dealerships to deliver the vehicles to the dealership lot.

*Second*, Plaintiffs pleaded no facts which support the notion they had a basis to interpret the term "destination charge" as reflecting ***FCA US's*** actual cost of transporting a vehicle to a dealership. Plaintiffs' averments about why a consumer might believe the term "destination charge" is exclusive of profit center entirely on statements made in third-party publications about the supposed nature of a destination charge. Appx133-35 (¶¶67-69). However, Plaintiffs did not plead they even saw any of these publications.

---

[13] *See* 15 U.S.C. § 1232(f).

Even if Plaintiffs had averred they read the publications they outlined in the Complaint (which they did not), an interpretation of "destination charge" as stating a ***manufacturer's*** actual transportation costs would not hold up under the governing law. Plaintiffs, like all citizens, are charged with having knowledge of the law. *See, e.g., Atkins v. Parker*, 472 U.S. 115, 130 (1984) ("All citizens are presumptively charged with knowledge of the law"); *Anela v. Cty. Of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986) ("Private citizens are presumed to know the law"). And, 15 U.S.C. § 1232(f) makes clear that the amount of the stated destination charge on a vehicle's window sticker reflects what a manufacturer like FCA US ***charged a selling dealership*** for delivering a vehicle to the dealer's location; nothing in the statute suggests it is the amount of any actual transportation.[14]

The district court, and every other court to have considered the issue, have all concluded that the term "destination charge" does not convey the notion that the amount stated is the manufacturer's actual

---

[14]Specifically, 15 U.S.C. § 1232(f), expressly provides that the amount displayed on a window sticker reflects "***the amount charged, if any, to [a] dealer*** for the transportation of such automobile to the location at which it is delivered to such dealer."

transportation cost to the exclusion of any profit. *See* Appx14-15; *see also Romoff v. Gen. Motors, LLC*, 574 F.Supp.3d 782, 788 (S.D.Cal. 2021), *aff'd,* 2023 WL 1097258 (9th Cir. 2023); *Gunn v. FCA US LLC*, 2023 WL 5418736, \*5 (N.D.Cal. 2023); *Beeney v. FCA US LLC*, 2023 WL 6962116 (D.Del. 2023).

Notably, these nearly identical cases are fully consistent with this Circuit's findings in *Ciser v. Nestle Waters N. Am. Inc.*, 596 Fed.Appx. 157 (3d Cir. 2015). In *Ciser*, allegations that a "disclosed late fee" was deceptive or misleading because it was excessive and bore "no rational relationship" to the actual costs incurred by the party who imposed it were found to be legally insufficient to support a statutory fraud claim. 596 Fed.Appx. at 157-58; *see also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 624 (7th Cir. 2012) (affirming dismissal of misrepresentation and omission claims, finding it would be "unreasonable to read into language" that disclosed a "per-transaction" shipping and handling cost "that the fee related[d] to actual costs").

The analysis in *Romoff* is particularly applicable to the facts here. There the plaintiffs complained the term "destination charge" when used on a vehicle's window sticker misleadingly suggests the amount of the fee

charged is the "actual cost of shipping." 574 F.Supp.3d at 785. They premised their liability theories on the notion that the amount displayed "far exceed[ed] the actual costs GM pays to transport vehicles to dealers." *Id.* They argued these allegations were legally sufficient to support a finding of deceptive and unfair conduct. *Id.* at 787-88.

The district court in *Romoff* disagreed with the plaintiffs and dismissed their complaint, reasoning the term "charge" is defined as "the price demanded for something" and "reasonable or average consumers would not be surprised to learn that the price of goods often includes profit for the seller." *Id.* at 788. It concluded the "term 'Destination Charge' does not reasonably imply the absence of profit." *Id.* The Ninth Circuit affirmed, expressly holding that "a reasonable or average consumer would not be deceived by the destination charge" listed on the window sticker. *Romoff*, 2023 WL 1097258 at *1. In doing so, the court found the plaintiffs had "not plausibly alleged deception" because "the destination fee is charged to the dealers and paid by them to GM, regardless of Plaintiffs' speculative reasoning concerning what is responsible for the makeup of such fees." *Id.*; *see also Gunn*, 2023 WL 5418736 at **5-6 (rejecting argument that term "destination charge"

misleadingly suggests a lack of profit); *Beeney*, 2023 WL 6962116 at *5 ("this Court holds as a matter of law that no reasonable consumer would believe that the destination charges represented the actual cost of transporting the vehicles to the dealerships and included no manufacturer profit").

In their brief, Plaintiffs dismiss *Gunn* and *Beeney* out of hand simply by noting that neither case has reached its final resolution. Pl. Brief, pp. 43-44. And, they argue the allegations they plead distinguish their claims from those at issue in *Romoff*. *Id.* at pp. 44-46. Specifically, Plaintiffs argue *Romoff* is distinguishable in two ways: (1) they made allegations of third-party publications describing the term "destination charge" to be exclusive of profit whereas the Ninth Circuit relied on a dictionary definition of the word "charge"; and (2) they "focus on a surcharge imposed by FCA on consumers." *Id.*

The purported distinctions proffered by Plaintiffs cannot be reconciled with the allegations of their Complaint. As a starting point, the publications Plaintiffs referenced in their Complaint have nothing to do with their own claims as they never alleged they even saw them. *See supra*. Furthermore, even if one assumes the third-party publications

could be interpreted to mean that a stated destination charge does not include profit, there is no allegation these publications are referring to a manufacturer versus a selling dealership when they mention there is no profit in a destination charge. And, finally, there is not a single allegation in the Complaint that supports the notion FCA US imposed any charge of any nature on Plaintiffs. To the contrary, in the Complaint Plaintiffs admit that it is a selling dealership who is obligated to pay FCA US the destination charge, not them. *See* Appx132-33(¶66 fn.25).

Plaintiffs' "omission" claims—to the extent they were meant to stand independently—suffer from the additional flaw that the facts pleaded to not support a duty to disclose. As Plaintiffs admit, an omission claim cannot survive absent a duty to disclose. *See* Pl. Brief, p. 38. Plaintiffs affirmatively state they are not relying on AIDA to create a duty to disclose. *Id.* at p. 41. Instead, they contend their allegation that "consumers will be misled by the 'destination charge' label that FCA used" is sufficient to create such a duty. *Id.* But the law does not support this. The recognized bases for a duty to disclose in New Jersey are (1) a fiduciary relationship, (2) expressly reposed trust by one party in another, or (3) a transaction that is fiduciary in nature. *See, e.g., Trocki*

*v. Penn Nat'l Mut. Cas. Ins. Co.*, 2023 WL 5950552, *2 n.12 (3d Cir. 2023). The Complaint is devoid of the facts necessary to create any such relationship. *See*, *generally*, Appx103-290.

In addition, the district court properly found the omission claims failed based on an absence of allegations to support materiality. Plaintiffs acknowledge materiality is a required element of an omission claim. Pl. Brief, pp. 38-40. Yet, all that Plaintiffs can point to in arguing they sufficiently alleged this element is their injury allegations, *i.e.,* they paid a price they would not have paid had a profit margin not been built into the destination charge. *Id.* Of course, the entities which sold Plaintiffs their vehicles had no profit margin built into the fully disclosed destination charge. *See supra.* And, there is not a single fact pleaded supporting the notion that the dealerships would have been willing to sell Plaintiffs their vehicles at a lesser price in light of this. *See*, *generally*, Appx103-290. The lack of such allegations, coupled with the absence of any allegation that Plaintiffs would have walked away and not purchased their vehicles at the price they ultimately paid if they had known the destination charge included a profit, leaves materiality lacking.

Finally, the host of allegations Plaintiffs set forth in their Complaint about behavioral economists' "drip pricing" and "partition pricing" phenomena (Appx136-149 (¶¶72-91)), and their reiteration of these phenomena in their brief and argument that such practices allowed FCA US to generate an improper profit (Pl. Brief, pp. 11, 34), do not make their claims viable. Plaintiffs admitted in the Complaint, and again admit here, that these phenomena involve a seller revealing different components of a product's pricing one-by-one as a sales transaction progresses. Appx136-149 (¶¶72-91); Pl. Brief, p. 11. They averred this allows a seller to manipulate consumers during the sales process because, purportedly, consumers "underestimate the total cost of the transaction." *Id.*; *see also* Appx140(¶80). But, Plaintiffs' own admissions negate any notion that ***they*** were subjected to any such phenomena. Indeed, Plaintiffs admitted they got their pricing information by reviewing the window stickers on their vehicles ***where every component of the total price, including the destination charge, was fully disclosed***. *See* Appx110-121(¶¶12-13, 18-19, 24-15, 30-31, 36-37, 41-42).

Because Plaintiffs pleaded no facts supporting any wrongful conduct the judgment dismissing their claims should be affirmed.

**B.**    ***The District Court's Dismissal Should Be Affirmed Because Plaintiffs Pleaded No Facts Supporting The Existence Of An Injury (All Counts).***

The district court's dismissal of the Complaint should be affirmed for the separate and independent reason that the facts pleaded supported no injury.  Plaintiffs offered nothing more than conclusory averments that a failure to disclose the stated destination charge included a profit "leads consumers to pay more than they otherwise would." Appx152(¶96).  Plaintiffs did ***not*** allege they asked about the destination charge, tried to negotiate it, or tried to negotiate a vehicle price from anything other than the "total price" listed on their vehicles' window stickers.  *See*, *generally*, Appx103-290.

Critically, Plaintiffs did ***not*** plead facts showing:  the total price they would have paid without the inclusion of a profit in the destination charge; a decreased destination charge would have left all other pricing components unaffected; how the destination charge factored into their negotiations with the dealer; how a destination charge free of profit would necessarily result in a dealer lowering a negotiated total price; or that they would have walked away if a dealer did not lower the price they ultimately paid for their vehicles.  *Id.*

Without allegations connecting the alleged profit in the destination charge with the ultimate total price paid, the district court was correct to find the Complaint failed to state any claim.

**C.**   ***The District Court's Dismissal Of The Equitable Claims Should Be Affirmed For The Additional Reasons That The Facts Pleaded Failed To Establish FCA US Benefitted Or That Any Money Belongs To Plaintiffs (Counts I, III).***

Plaintiffs admit the equitable claims they pleaded required allegations showing FCA US "received a benefit [from them] and [the] retention of that benefit without payment would be unjust." Pl. Brief, p. 42 (citations omitted). They argue they pleaded these required elements by baldly alleging they paid money to a dealership that was "earmarked" to pay delivery costs, and the "profit portion of the destination charge" is a benefit to FCA US. *Id.* These allegations fall far short of the pleading threshold for Plaintiffs' equitable claims to survive.

In addition to lacking allegations establishing wrongful conduct, Plaintiffs' equitable claims were not viable because there were no averments of a direct relationship between Plaintiffs and FCA US. That payments to a dealership are "earmarked" to satisfy a "contractual obligation" that dealership owes to FCA US does not create a relationship of any kind between FCA US and Plaintiffs. *See, e.g., Stratis v. BMW of*

*N. Am., LLC*, 2023 WL 3092188, *14 (D.N.J. 2023) ("Courts of this District regularly dismiss [equitable] claims where a plaintiff fails to establish a direct relationship with an automotive manufacturer"); *Powell v. Subaru of Am., Inc.*, 502 F.Supp.3d 856, 898 (D.N.J. 2020) (dismissing unjust enrichment claim where plaintiffs purchased vehicles "from an authorized dealer").

In reality, the Complaint actually disproved the necessary direct relationship between FCA US and Plaintiffs.  It firmly established Plaintiffs purchased their vehicles from third-party independent dealerships which, of course, amounts to an admission that Plaintiffs gave their money to dealerships, ***not*** FCA US.  Appx110-21(¶¶11, 17, 23, 29, 35, 40).[15]  Because Plaintiffs paid no money to FCA US their equitable claims fail as a matter of law.  *See Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, *34 (D.N.J. 2022) ("When consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer"); *Snyder v. Farnam Co., Inc.*, 792 F.Supp.2d 712, 724

---

[15]The fact that Plaintiffs paid dealerships, not FCA US, was bolstered by their admission in the Complaint that FCA US actually imposed the destination charge on dealerships, and it is the dealerships which have the "contractual obligation" to pay that charge, not consumers.  *See* Appx132-33(¶66 fn.25).

(D.N.J. 2011) (same); *Innovative Cosmetic Concepts, LLC v. Brown Packaging, Inc.*, 2020 WL 7048577, *5 (D.N.J. 2020) (same).

Furthermore, the Complaint was devoid of any facts showing the money paid by Plaintiffs to dealerships belongs to them as opposed to the dealerships who they gave it to. *See*, *generally*, Appx103-290. Plaintiffs did not even make a conclusory allegation that any money rightfully belongs to them ***as opposed to the dealerships*** which were obligated to pay the full amount of the displayed destination charges in order to obtain a vehicle. *See*, *generally*, Appx103-290. For this additional reason Plaintiffs' allegations were legally insufficient to support their equitable claims. *See, e.g., Ponzio v. Mercedes-Benz USA, LLC*, 447 F.Supp.3d 194, 260 (D.N.J. 2020) ("In New Jersey, a benefit conferred upon a retailer not sharing in profits with the product manufacturer does not result in the manufacturer's unjust enrichment").

Because the facts pleaded defeat rather than support Plaintiffs' equitable claims, the judgment of dismissal should be affirmed.

**D.    The Complaint Is Not Saved By Plaintiffs' Allegations Of Legislative History, Nor Their Citations To Inapplicable Cases.**

The Complaint contains extensive allegations about the legislative history of AIDA, the federal statute which mandates that a manufacturer disclose on a window sticker the charge it imposed on a dealership to deliver a vehicle to its lot.  *See* Appx164-88(¶¶119-63).  And, in their brief Plaintiffs argue this history somehow supports the notion that the statute was intended to stop manufacturers from "inflating" destination charges.  Pl. Brief, pp. 13-14.  But, even Plaintiffs' allegations make clear the only purpose Congress had in mandating that manufacturers display the "destination charge" on window stickers was to ensure consumers knew the ***dealer's*** cost to get the vehicle to its lot.   *See, e.g.,* Appx179(¶150) (alleging senator told president the proposed statute compels nothing with respect to a destination charge other than to require the manufacturer to "show … the delivery cost, if any, ***which was charged to the dealer***" (emphasis added)).

In any event, Plaintiffs' attempt to use legislative history to create some type of public policy is built almost entirely on the random statements of individual senators at various times.   *See* Appx164-

32

88(¶¶119-63).   This attempt must be rejected pursuant to the United States Supreme Court's admonishments that "floor statements by individual legislators rank among the least illuminating forms of legislative history,"[16] and legislative history cannot "muddy clear statutory language."[17]   Here, the statutory language is clear on its face, and shows AIDA was enacted only to ensure a manufacturer discloses on a window sticker, *i.e.,* "***the amount charged, if any, to [a] dealer***" to deliver the vehicle.   *See* 15 U.S.C. § 1232(f).   There is no indication in the statute of any intent to prohibit a manufacturer from assessing the dealer a destination charge that includes a profit.

The cases Plaintiffs cite in their brief likewise do not save their claims.   Plaintiffs argue that *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804 (D.N.J. 1985), supports the notion that that the term "destination charge" —in the abstract—could mislead consumers into believing the amount noted incorporates no profit.   Pl. Brief, pp. 25-26.   According to them, in *Barry* the court held the term "dealer invoice" was found to be deceptive

---

[16] *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017).

[17] *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011).

because it was "capable of misleading or deceiving consumers about how much the dealership paid a manufacturer for a vehicle." *Id.*

Not surprisingly, Plaintiffs do not discuss the context in which the use of "dealer invoice" was found to be potentially misleading. *Id.* In *Barry*, a state regulation prohibited a dealership from using the terms "dealer's cost" or "inventory price" in advertisements because the legislature declared those terms could lead consumers to believe they referred to a dealership's actual cost of a vehicle and this could impact price negotiations. 494 A.2d at 807-12. The defendant did not use the precise terms prohibited by the regulation in its advertisements, but did use the term "dealer invoice." *Id.* The court found the use of "dealer invoice" was no different than the terms expressly prohibited by the regulation, and thus the defendant's advertisement was potentially deceptive or misleading. 494 A.2d at 807-12.

The analysis in *Barry* has nothing to do with this case. To the contrary, here the regulation at issue (AIDA) actually mandates that FCA US do exactly what it did, *i.e.,* disclose the price it charged the dealership as a destination charge. And, in contrast to *Barry*, here Plaintiffs conceded that the amount of the destination charge shown on

34

the window stickers of their vehicles was exactly what the dealership paid to FCA US as a "destination charge."  Appx132-33(¶66 fn.25).

Plaintiffs also leave out all context when they argue *Kugler v. Romain*, 279 A.2d 640 (N.J. 1971), supports their claim of unconscionability.  *See* Pl. Brief, p. 32.  They portray *Kugler* as standing for the proposition that allegations of an "'exorbitant' price that bears little relation to the value provided to the consumer" is sufficient to support a statutory fraud claim.  *Id.*  But, a great deal more than just the price charged by the defendant led the court in *Kugler* to conclude deception had occurred.

The court in *Kugler* noted a host of defendant's acts were deceptive, including a complete misrepresentations of the product sold.  279 A.2d at 645-46.  The actual issue before the court was whether the attorney general could be awarded relief for the hundreds of the defendant's victims who were deceived even though they were not parties to the suit. *Id.*  Ultimately, the court concluded such relief could be awarded because all the transactions had one thing in common, *i.e.,* the excessive cost of books having little or no value to the consumers who bought them.  *Id.* at 651; *see also id.* at 653 ("Here the facts reveal that the seller's price was

not only roughly two and one half times a reasonable market price, assuming functional adequacy of the book package for the represented purpose, most of the package was actually practically worthless for that purpose").

The analysis in *In re National Credit Mgmt. Group, LLC*, 21 F.Supp.2d 424 (D.N.J. 1998), is no different than in *Kugler*. *See* Pl. Brief, p. 32. There, as in *Kugler*, it was much more than the price charged that played into the court's analysis of whether actionable conduct occurred. Indeed, in *National Credit*, the court noted not only the price charged in finding unconscionable practices potentially occurred, but numerous other instances of wrongdoing by the defendant, including it having misled the plaintiffs as to what the fee paid entailed, and the fact that it did not reveal to consumers that they could get on their own the exact information the defendant was selling. 21 F.Supp.2d at 452-53.

The facts here are not remotely similar to *Kugler* or *National Credit*. Here there is no allegation the destination charges associated with Plaintiffs' vehicles were in multiples of FCA US's costs. *See*, *generally*, Appx103-290. In fact, there is not even an allegation that it was in multiples of the actual transportation costs Plaintiffs argue they

should have been charged. *Id.* And, here, Plaintiffs do not, and cannot, allege that having their vehicle delivered to the dealership of their choice provided no value to them. *Id.* Nor do Plaintiffs allege that multiple acts of deception occurred during their purchases. *Id.* To the contrary, the allegations of the Complaint prove all that occurred was FCA US fully complied with a federal statute governing the disclosure of destination charges, precisely as dictated therein. *Id.*

## CONCLUSION

For the reasons set forth herein, the district court's order dismissing Plaintiffs' Second Amended Class Action Complaint should be affirmed.

Respectfully submitted,

*/s/ Stephen A. D'Aunoy*
Stephen A. D'Aunoy
KLEIN THOMAS LEE & FRESARD
100 N. Broadway, Suite 1600
St. Louis, MO 63102
(314) 888-2970
steve.daunoy@kleinthomaslaw.com

*Attorneys for Defendant-Appellee FCA US LLC*

## **CERTIFICATE OF COMPLIANCE**

I, Stephen A. D'Aunoy, the undersigned, pursuant to Third Circuit Local Appellate Rule 28.3(d), certify that I am a member in good standing of the bar of this Court.

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains no more than 13,000 words. This document contains 7,248 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word in 14-point Century Schoolbook.

Pursuant to the Third Circuit Local Appellate Rule 31.1(c), I certify that the text of the electronic version of the Brief is identical to the text in the paper copies of the Brief.

I further certify that a virus detection scan was performed on the Brief using Sophos Endpoint, Version 3.5.851, and that no virus was detected in the file.

*/s/ Stephen A. D'Aunoy*
Stephen A. D'Aunoy
KLEIN THOMAS LEE & FRESARD
100 N. Broadway, Suite 1600
St. Louis, MO 63102
(314) 888-2970
steve.daunoy@kleinthomaslaw.com

## CERTIFICATE OF SERVICE

I certify that on February 26, 2025, I electronically filed the foregoing with the Clerk of the Court for the Third Circuit by using the Court's CM/ECF system, which will send notification of this filing to all counsel of record.

*/s/ Stephen A. D'Aunoy*
Stephen A. D'Aunoy
KLEIN THOMAS LEE & FRESARD
100 N. Broadway, Suite 1600
St. Louis, MO 63102
(314) 888-2970
steve.daunoy@kleinthomaslaw.com